LASKER-MORRIS BANK & TRUST COMPANY *v.* GANS.

Opinion delivered February 11, 1918.

1. TRUSTS—RESULTING TRUSTS—LANDS PURCHASED WITH ANOTHER'S MONEY.—A. and B. furnished C. with money with which to buy lands for their joint benefit. C. took the money and bought certain lands, the title to which was taken in his name individually. *Held,* a trust results by implication of law for the benefit of A. and B. to the extent of the money furnished.

2. TRUSTS—RESULTING TRUST.—A writing declared as follows: "June 6, 1900. The following property deed to me by the Co-operative Real Estate Company of Little Rock, is held by me in trust for

Gertie Gans, Sol Gans and A. M. Heiseman as their interests may appear. * * *" The writing then describes certain lands and is signed "A. M. Heiseman." *Held,* the writing does not create an express trust, but it is evidentiary of the facts out of which a resulting trust arises.

3. TRUSTS—RESULTING TRUST—HOW CREATED—PURCHASE OF LAND—SUBSEQUENT DECLARATION—ORAL PROOF.—Transactions between the parties subsequent to the purchase of certain lands can not create a resulting trust, but if such a trust arises out of the purchase of the land, its character as a resulting trust is not altered by a writing subsequently executed, which acknowledges the existence of the trust; nor does the fact that the writing acknowledges the existence of a trust, change the character of the transaction from a resulting trust, which may be established by parol, to an express trust, which is within the statute of frauds.

4. TRUSTS—RESULTING TRUSTS—PROOF.—The proof held to establish the existence of a resulting trust in certain lands purchased by deceased with money furnished by himself and others.

5. TRUSTS—RESULTING TRUSTS—LIMITATIONS AND LACHES.—C. purchased property with money furnished by himself and A. and B. It was held that he held title to the property for the three parties as trustee, under a resulting trust. No accouning was had of the trust, from the date of the purchase of the land until C.'s death, a period of fifteen years. *Held,* under the evidence that an action by A. and B. was not barred by either limitations or laches.

6. ADMINISTRATION—DEMAND AGAINST ESTATE—AFFDAVIT.—In an action against an executor for an accounting of a trust estate, of which deceased was trustee, *held,* the affidavit attached to the complaint was a sufficient compliance with the law.

7. TRUSTS—RESULTING TRUSTS—INTEREST.—The estate of a person who held certain lands as trustee under a resulting trust is liable for interest on money collected by the trustee arising from the sale of the lands from the date of the sale.

8. EVIDENCE—ADMINISTRATION—TRANSACTIONS WITH DECEASED.—Testimony that witness and deceased occupied a position of unreserved and unlimited trust and confidence, relates to a relationship and not a transaction, and is not incompetent under section 2 of the schedule to the Constitution.

9. APPEAL AND ERROR—CHANCERY APPEAL—TRIAL DE NOVO—INCOMPETENT TESTIMONY.—Chancery appeals are tried *de novo,* and it is the duty of this court, as well as that of the chancellor, to disregard incompetent testimony, and a cause will be affirmed, when the chancellor's finding is in accordance with the preponderance of the testimony, after the incompetent testimony is disregarded.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Morris M. & Louis M. Cohn,* for appellant.

The statute of frauds applies. Parol testimony to establish a trust in real estate is not admissible. Kirby & Castle's Digest, § 3397. The written document does not fulfil the requirements of the statute. It fails to show what the trust was, without recourse to parol evidence. Browne Stat. Frauds, § 108; 16 Ark. 364; 28 Enc. of Law, 913; 76 Ark. 237.

2. Sol Gans' testimony was inadmissible as to transactions with the deceased. 30 Ark. 285; 79 *Id.* 414; 80 *Id.* 277; 79 *Id.* 69; 82 *Id.* 163; 83 *Id.* 210; 108 *Id.* 171, 179.

3. The complaint was not properly sworn to, as the statute requires. 21 Ark. 519; 30 *Id.* 756; 48 *Id.* 360; *Ib.* 304; 66 *Id.* 327; 69 *Id.* 62; 105 *Id.* 95, 98; 105 *Id.* 95-6.

4. The doctrine of laches applies. 79 Ark. 570-5; 63 *Id.* 405. It is applicable to trusts like this. 84 Ark. 61; 110 *Id.* 389; 18 A. & E. Enc. Law, 119-120; 114 Ark. 359, 365; 95 S. E. 606, 608; 62 W. Va. 602.

5. Interest should not have been allowed. 44 S. W. 442.

6. There was no resulting trust. 29 Ark. 612; 30 *Id.* 230; 40 *Id.* 62; 79 *Id.* 164.

*John M. Moore, W. B. Smith, J. Merrick Moore* and *H. M. Trieber,* for appellee.

1. The statute of frauds can not avail as a defense. It was not pleaded nor was any demurrer interposed. 32 Ark. 97; 96 *Id.* 184; 105 *Id.* 638. But if pleaded it could not avail. This is not an express trust, but a resulting trust and need not be evidenced by a writing. 70 Ark. 145; 98 *Id.* 452; 39 Cyc. 108. Gans paid his part of the whole of the note to the bank. 5 Atl. 190.

2. The statute of limitations is no defense. 16 Ark. 122; 4 Blackf. 81. It does not begin to run until the trustee openly repudiates his trust and begins to hold adversely. 71 Ark. 164; 67 *Id.* 340; Perry on Trusts (6th Ed.), § 863; 85 Wis. 332; 17 R. C. L. § 163, p. 796; 74 N.

E. 933; 2 Perry on Trusts (6th Ed.), 1418; 17 R. C. L. § 162, p. 795.

3. The doctrine of laches can not operate to defeat the claim. 103 Ark. 251; 82 *Id.* 367; 5 Pom. Eq. Jur. (3d Ed.), § 21; 2 Perry on Trusts (6th Ed.), § 850; 86 N. W. 894.

4. Sol Gans' testimony was competent. 115 Ark. 538. It did not go to any *transaction* with Heiseman, but only to the *relation* of confidence and trust.

5. Interest was properly allowed.

6. The statute was complied with as to verification of the complaint. 54 Ark. Law Rep. 493.

STATEMENT OF FACTS.

Appellees sued appellant, as administrator of the estate of A. M. Heiseman, deceased, in the chancery court of Pulaski County, and, for their cause of action, alleged the following facts: That, on August 19, 1899, the Co-Operative Real Estate Company, a corporation, conveyed certain lands, owned by it, described in the declaration of trust set out below to A. M. Heiseman, for the consideration of $6,500.00, of which sum Sol Gans furnished 22.47 per cent., and Gertie Gans furnished 21.35 per cent., and A. M. Heiseman the remainder, and subsequently Heiseman executed to the Gans a declaration of trust as follows:

"June 6, 1900. The following property deed to me by the Co-Operative Real Estate Company of the City of Little Rock is held by me in trust for Gertie Gans, Sol Gans and A. M. Heiseman as their interest may appear: Lots 9 and 10, block 8, Centennial Addition; lot 7 and S½ of lot 8, block 1, Wright's Addition; lots 5, 6, 7, 8, block 7, Adams' Addition; E½ NE SW Sec. 5, Twp. 1 N. R. 12 W. twenty acres, all being in Pulaski County, Arkansas.

"(Signed)   A. M. Heiseman."

That thereafter the land in Section 5 was platted into blocks and lots and called "Heiseman's Addition to the City of Little Rock." That a number of these lots, to-

gether with other lots not included in the said addition, but embraced in said trust, were sold, and Heiseman collected the money realized from these sales, but never accounted to the Gans for their proportionate part. The Union Trust Company was also made party defendant, and as against that company it was prayed that it be required to show what interest it had or claimed in the unsold lots. There was a prayer for an accounting, and for partition of the unsold lots. The complaint contained the following verification:

"Comes Gus Gans and says that he is the agent for the plaintiffs, Sol Gans and Gertie Gans, and authorized on their behalf to make this affidavit; that he is familiar with the matters and things set out in the above and foregoing complaint, and that the allegations thereof are true.

"(Signed)    Gus Gans."

The administrator answered, and denied the existence of the trust, or any indebtedness to the plaintiffs, and pleaded the bar of the statute of limitations, and also laches. The Union Trust Company filed an answer and cross-bill, in which it alleged that, in consideration of certain sums of money which it had advanced Heiseman, that Heiseman had executed to it a deed for the land, which was divided into lots, and that, pursuant to a contract to that effect, it had undertaken the sale of these lots for an agreed commission, and, after selling a number of these lots, there remained due it, including interest, the sum of $6,130.40. The unsold lots were ordered sold in satisfaction of that indebtedness, and, at a sale for that purpose, the Union Trust Company bid for all of the unsold lots the amount of its debt. This sale has been approved and confirmed, and that debt thereby extinguished, and no one complains of that action.

In behalf of plaintiffs, T. R. Fox testified that he was intimately acquainted with Heiseman and had worked with him for many years for Gans & Sons, and that he was familiar with his handwriting, and identified the minutes of the meeting of the stockholders of the real

estate company written by Heiseman, in which there appeared a report, written by Heiseman, showing an indebtedness of the real estate company amounting to $6,604.03, and the passage of a resolution directing the board of directors to sell the property of that company, and to terminate its affairs. The minutes showed the amount of stock owned by the stockholders present, the recital being that G. M. (Gertie) Gans owned 57 shares, and Sol Gans 60 shares, and Heiseman 150 shares, and the ownership of the remaining shares of stock was also set out. The witness also identified as the writing of Heiseman the declaration of trust set out above.

Sol Gans testified that the stockholders of the real estate company became dissatisfied, and it was determined to wind up its affairs, and Heiseman suggested that they purchase its assets, and that money for this purpose was borrowed from the German Bank on the joint note of himself and Heiseman. This note was renewed once or twice, but was finally paid, and the witness testified that his recollection is that he not only paid the part due by himself and Mrs. Gans, his sister-in-law, but that he paid the entire note. No one was interested in the purchase of the land of the real estate company except himself and his sister-in-law and Heiseman, and the declaration of trust set out above was executed to evidence the interest owned by witness and Mrs. Gans. Witness testified that Heiseman was employed by him for 24 or 25 years, during which time Heiseman had charge of a great many business transactions for him, and that the relationship between them was one of unreserved trust and confidence, and that Heiseman handled all the financial transactions of the firm which employed him and was, in all respects, Gans' confidential man. He detailed the transaction with the bank by means of which the money was secured to purchase the land and that in this transaction with the bank he acted for himself and Mrs. Gans. Witness further testified that Heiseman quit his employment before his death, but that the trust was

never, in any manner, repudiated. Objection was made to the competency of all this testimony.

The bookkeeper of the Union Trust Company testified in regard to the advances made Heiseman on the land and, by stipulation, it was shown that Heiseman had received $7,300.00 from the other property described in the declaration of trust, from all of which it appeared that, if a trust in fact existed, as recited in the declaration of trust, Heiseman was indebted to Sol Gans in the sum of $5,572.98, plus $1,470.76 interest, and in favor of Mrs. Gans in the sum of $5,066.80, plus $1,379.45 interest, and a decree for that amount of money was rendered in favor of the plaintiffs respectively, and the administrator has duly appealed.

In its answer, and on this appeal, the administrator disputes the existence of a trust or any indebtedness, and the sufficiency and the competency of the testimony by which that fact was sought to be established; and further contends, if there was any indebtedness, same is barred by limitation and laches; and also that the claim was never properly authenticated, and that, in any event, interest should not be allowed; and it is also urged that the writing exhibited is insufficient under the statute of frauds to support a finding that a trust exists. Other facts will be stated in the opinion.

SMITH, J., (after stating the facts). (1-2) We think the statute of frauds does not apply here. It is not sought to enforce an express trust. The suit was brought upon the theory that the Gans had agreed to furnish, and had, in fact, furnished, part, if not all, of the consideration used in the purchase of the land, and had done so under the agreement that the purchase should inure to the benefit of the persons so furnishing the purchase money in proportion to the amount furnished. The writing offered in evidence does not create an express trust; but it is evidentiary of the facts out of which a resulting trust arises. Section 3667 Kirby's Digest. The Gans, by the execution of the note to the bank, furnished money

to Heiseman with which to buy the lands for their joint benefit. Heiseman took the money so furnished and bought lands the title to which was taken in his name individually. A trust results by implication of law for their benefit to the extent of the money furnished. *Grayson* v. *Bowlin,* 70 Ark. 145; *Foster* v. *Treadway,* 98 Ark. 452; *Jones* v. *Jones,* 118 Ark. 146; *Keith* v. *Wheeler,* 105 Ark. 323, and cases there cited.

(3) Nor does the fact that the writing set out acknowledges the existence of a trust, change the character of the transaction from a resulting trust, which may be established by parol, to an express trust, which is within the statute of frauds. Transactions between the parties subsequent to the purchase of the land could not create a resulting trust; but if such a trust arises out of the purchase of the land, its character as a resulting trust is not altered by a writing subsequently executed which acknowledges the existence of the trust. *Grayson* v. *Bowlin,* 70 Ark. 145.

(4) Appellant strongly argues that no trust ever existed, and presses upon our attention the fact that the land was purchased in 1899, and that there were many transactions in regard to it which the Gans never questioned; that it was sold to the Union Trust Company by Heiseman and divided into lots, and that during many years no settlement of the trust was had, and that no accounting was asked until after Heiseman's death in 1915. It appears, however, that the deed from the real estate company to Heiseman was executed on the 19th of August, 1899, for a recited consideration of $6,600.00, and Gans produced at the trial the note of himself and Heiseman for that sum of money and which also was dated on the 19th of August, 1899, this being the note referred to above. This testimony, and the other testimony set out above, we think, supports the finding made by the court below that Heiseman took the title to the property as trustee for himself and for the Gans, who united with him in furnishing the purchase money.

(5)   Does the statute of limitations apply, and are the plaintiffs barred from asserting their rights by laches?   It is true a great many years expired here between the time of the creation of the trust and the date when the Gans asked for an accounting.   But the testimony shows that there was never any repudiation of the trust and that the confidence of the Gans in Heiseman was unreserved; that there were many and large transactions between them; and, as there was no repudiation of the trust, and no change in the situation of the parties resulting from inaction, we conclude that the cause of action was not barred, either by limitation or laches.

(6)   The form of affidavit attached to the complaint which we set out above, does not conform to the requirements of Section 114 of Kirby's Digest, which prescribes the form of affidavit to be made to a demand against the estate of a deceased person.   It appears, however, from the pleadings in the cause, that a properly authenticated and verified statement of the account had been presented to the administrator in apt time, and that the same had been disallowed, and that the affidavit attached to these demands fully complied with Section 114 of  Kirby's Digest.   This sufficiently complied with the law.

(7)   We are also of the opinion that interest was properly allowed on this demand.   The court computed the interest from the date of each of these sales, the result of which is to charge Heiseman with the interest on the money during the time it was in his possession. The argument that a great length of time was permitted to expire before any demand was made for a settlement, has more force when made in support of the plea of laches than it has when made against the allowance of interest.   If the estate of Heiseman should be held for this money at all, it should also be held for the interest which accrued from the date of the sales, at which time, as a matter of law, it was the duty of Heiseman to account to his associates for their *pro rata* share.

(8-9)   It is finally insisted that much of the testimony of Sol Gans is incompetent, because it involved

transactions with the deceased Heiseman in a suit against his administrator, and thereby offends against the inhibition of Section 2 of the Schedule to the Constitution prohibiting such evidence. The testimony that the relation between witness and Heiseman was one of unreserved and unlimited trust and confidence related to a relationship, rather than to a transaction, and is not, therefore, incompetent. The testimony of Gans, that Heiseman suggested to him, at a meeting of the stockholders of the Co-Operative Real Estate Company, that they purchase the assets of that corporation, was incompetent, because it does relate to a transaction between the witness and the administrator's intestate. But we try chancery cases *de novo,* and it is our duty as well as that of the chancellor to disregard incompetent testimony; and, when we have disregarded this incompetent testimony, we are of the opinion that the finding of the chancellor is in accordance with the preponderance of the evidence. It was competent for the witness to produce the note which he and Heiseman executed to the bank; and it was competent for him to state that he paid the note, as this testimony relates to a transaction with the bank. From the note itself, it appears that it was of even date with the deed to Heiseman, and covered the consideration recited in the deed. We think this testimony, and the declaration of trust executed by Heiseman in his own handwriting, warranted the court in finding that Heiseman and the Gans had jointly furnished the purchase money with which the land was acquired and that it was purchased for their joint benefit, in proportion to the part furnished, and that, therefore, a trust resulted as declared by the court. The decree of the court below is therefore affirmed.