HARRIS *v.* WHITWORTH, ADMINISTRATOR.

4-7913                                              194 S. W. 2d 1017

Opinion delivered June 3, 1946.

Rehearing denied July 1, 1946.

W. *Leon Smith*, for appellant.

*Reid, Evrard & Roy,* for appellee.

McHANEY, Justice. C. H. Harris, the father of appellant and appellees, other than the administrator, died intestate in the Chickasawba District of Mississippi county, Arkansas, on March.19, 1945, at the age of 88 years.. Said intestate left a substantial estate, both real and personal. His real estate consisted of two farms, one of 120 acres about a mile south of the city of Blytheville, known as the Home Place, on which he was residing, at the time of his death, with appellant; the other of about 202 acres some 6 or 8 miles northeast of Blytheville, known as the Crooked Lake Farm near Number Nine; and a number of pieces of rental property in said city. His personal property consisted ot two bank accounts totaling more than $32,000, U. S. Government bonds of the maturity value of $5,000, a lot of livestock—horses, mules, cattle, etc.—and farming machinery, equipment, feed, seed, etc.

On May 4, 1945, appellant filed a suit against appellee, Frank Whitworth, as administrator of his father's estate, alleging that in the year 1921 he and his father entered into a partnership agreement to operate as partners the farm property then owned by his father, which is the same as mentioned above, and the city property as above mentioned, and were to share equally in the gains and losses, which continued to the death of his father; that the personal property above described—bank deposits, bonds, livestock, etc., belonged to the partnership; that the administrator, appointed at the instance of his brother, Gordon Harris, and his sisters, Sue Burks and Mattie Bell Nation, wrongfully took possession of said

bank deposits which was partnership property, and has made demand upon him to surrender and deliver up the possession of the other personal property; and that until said partnership affairs are wound up, the interest of the estate therein is contingent. He prayed that the administrator be enjoined from listing said property as assets of said estate, or from paying estate or inheritance taxes thereon, and that the administrator be required to turn over to appellant the money in his possession so that the affairs of said partnership might be wound up.

The administrator answered with a general denial and cross-complained for the possession of the other personal property held by appellant and the rental value of the use thereof.

Thereafter, on May 11, 1945, appellant filed suit against his brother and sisters in which he sought specific performance of an alleged oral contract with his father made in 1921 to convey to him the 120 tract of land called the Home Place. He alleged that at that time his father was heavily indebted on account of the long illness and death of his wife (appellant's mother) and had been compelled to mortgage a portion of the Crooked Lake Farm to secure same and further alleged: "That by reason and on account of his advanced age and his inability to farm and manage his property he induced this plaintiff to assume the management and control of said property and made a contract and agreement with the plaintiff in consideration that the plaintiff would take charge of and manage said property and take care of the said C. H. Harris as long as he should live and pay off the mortgage indebtedness against said property and that the C. H. Harris and this plaintiff would be equal partners in the management and operation of said property and the said C. H. Harris, before his death, would deed the 120 acres above described to this plaintiff." Appellees in this case answered with a general denial and a plea of the statute of frauds, and filed a counter-claim against appellant for their share of the rental value of the 120-acre tract for the year 1945, and prayed partition of all the real estate.

Both cases were submitted to the trial court on depositions and stipulations, and resulted in decrees which found the issues of both law and fact in each case against appellant, and held that he was not entitled to recover either on his alleged partnership agreement with his father, or on the alleged oral contract to convey the land. On the counterclaim of the administrator the court held that he was entitled to recover from appellant the war bonds above mentioned, the mules, teams, livestock, farming implements, seed and feed, and awarded the possession thereof to the administrator, with process to recover same. On the suit regarding the Home Place, the court found that appellant and appellees are the owners as tenants in common of all the real estate of their deceased father, each being entitled to one-fourth interest therein, describing it, and that appellees were entitled to have partition made of said lands. Decree was entered therefor and viewers were appointed for said purpose. No recovery was allowed against appellant for rents. This appeal followed.

Appellant was 51 years old at the time he testified in this case. His mother died in 1920 and his father never remarried. He testified in support of his complaints that he entered into the oral agreements set out therein with his father in 1921, that is, the partnership agreement and the agreement to deed him the home place when the mortgage and other indebtedness was paid off. Appellant lived on the home place and farmed it at that time and for some years prior thereto. His father, brother and sisters lived on property owned by the father in Blytheville. The father owned all the real estate in 1921 that he owned when he died. From 1932 on the father lived with appellant and his wife on the home place. In 1937, appellant divorced his wife on account of her misconduct, but appellant and his father continued to live together on the home place, until the father was taken to the hospital on February 28, 1945, suffering from a heart attack from which he died on March 19. During his last illness the father was conscious at all times. For a period of at least 24 years, therefore, this alleged agreement between

father and son was said by the son to be in existence, yet no memoranda thereof in writing ever existed, or, if so, not produced, and no other member of the family ever heard of them until these suits were filed. Between the 19th day of March, the date of the death of the father, and May 4th, the date of the suit against the administrator, appellant not only did not tell his brother and sisters that he had this contract with his father, but on the other hand had conferences with them about the division of the whole estate, in which he wanted, as a part of his share, not the whole of the home place, but only 80 acres out of the 120 acres. The home place is on highway No. 61. The residence is on 80 acres east of the highway and 40 acres is west of the highway. Appellant wanted the division of property so made as to give him the 80-acre tract on the east and he wanted his brother George to have the 40-acre tract west of said highway. He made no claim that he had any contract with his father regarding a partnership operation of all the properties, or that he owned by virtue of an agreement any part of the real estate of his father.

Another significant fact is that, for 24 years after said contract was said to have been made, all business was conducted in the name of C. H. Harris, the father. All bank deposits were in his name. All checks on the bank accounts were signed by the father. Appellant had no authority to sign any checks for any partnership or any other purpose. As he so testified, he would write the checks and stick them under his father's nose to be signed, and, even after the father was so blind that his hand would have to be directed to the place to sign, he continued to place his name thereon and gave no authority to appellant to sign a check for any purpose. There is this exception: when the father was in the hospital, on his death bed, he gave authority for appellant to sign checks to cover hospital, medical and doctor's bills, and for no other purpose.

Some of the other significant facts and circumstances are that all the property, both real and personal, was assessed in the name of and all taxes were paid by the

father. The only assessment of taxes against appellant was for $25 on his household furniture. All income taxes were reported by the father and were paid by him, and no income tax report was ever filed by the partnership or by appellant, although the total tax would have been less, if the income had been returned as partnership income. There are other facts and circumstances that contradict appellant's claims. It appears to us to be entirely unreasonable that appellant would have operated under the alleged contract for 24 years, or for that matter, any number of years, and particularly after 1937 when the mortgage debt was paid in full, without having a division of the partnership funds. He says that for all this time he "lived like a negro" and worked day and night, and yet he never at any time demanded or received any portion of the large earnings of the alleged partnership. He must have known that his aged father was likely to die at any time and particularly after he went to the hospital, and with this knowledge before him he did not ask for or get from his father any deed to the home place or any writing indicating his one-half interest in the personalty.

There was testimony from a number of witnesses for appellant to the effect that the relationship between appellant and his father was close and that appellant looked after his father for several years as a dutiful and loving son would do. Also that C. H. Harris told them he was going to give Ancil the home place, and that they were operating on a 50-50 basis, meaning that each was getting half the profits. A great many witnesses testified for and against appellant, but when we give consideration to the undisputed facts and circumstances, many of which are mentioned above, as no doubt the trial court did, we agree with the trial court that appellant failed to establish his contract, nor can we say that the court's finding is against the preponderance of the evidence.

Assuming without so deciding that the evidence in the suit against the administrator does not run afoul of the proviso in § 2, Schedule of the Constitution, and

204

repeated in § 5154 of Pope's Digest, which reads: "Provided, in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party," still we cannot say that the finding that the contract was not proven is against the weight of the evidence.

This is so even though only a mere preponderance is necessary. Appellant testified to one contract only with his father and this covered the partnership agreement and the agreement to convey the land. It is conceded that as to that part of the oral contract relating to the land the clear and convincing rule applies. Whether the same rule applies to the partnership agreement because in the same contract, we find it unnecessary to decide, as we have already held that we cannot say the finding of the court on either phase of the contract is against the preponderance of the evidence.

It necessarily follows that the decree in each case must be and is affirmed.