HARRIS *v.* WHITWORTH, ADMINISTRATOR.

4-8528                                        211 S. W. 2d 101

Opinion delivered May 17, 1948.

*W. Leon Smith,* for appellant.

*Marcus Evrard,* for appellee.

SMITH, J. The present appeal is a continuation of the case of *Harris* v. *Whitworth, Adm.,* reported in 210 Ark. 198, 194 S. W. 2d 1017, the style of that case and this one being the same.

As appears from the former opinion, and from the record in the instant case, one C. H. Harris had attained the advanced age of eighty-eight years at the time of his death on March 19, 1945. He owned at the time of his death two farms, some city property, and valuable personal property, including two separate bank accounts, one of $12,000 and the other of $20,000, and United States bonds having a maturity value of $5,000. He was survived by two sons and two daughters. Frank Whitworth was appointed administrator of the estate.

Ancel Harris, one of the sons, who is the appellant here and was the appellant in the former cases, filed suit against the administrator in which he alleged that he and his father had entered into a partnership agreement in 1921 to operate as partners the farm property then owned

by his father, and certain city property, also owned by his father, and were to share in the profits and losses of the partnership, which relation continued until the death of his father, but that at the instance of his brother Gordon, and his sisters, Mrs. Burks and Mrs. Nation, an administrator had been appointed, who had wrongfully taken possession of all money and all of the personal property. He alleged that as surviving partner he was entitled to the possession of these assets for the purpose of winding up the partnership affairs, and that his demand for possession of this property had been refused. He prayed that the administrator be enjoined from listing this property as assets of the estate, and that the administrator be required to surrender the partnership assets to him.

Thereafter on May 11, 1945, appellant filed another suit against his brother and sisters, in which he sought specific performance of an alleged oral contract with his father, made in 1921, by which, as a part of the partnership contract, his father agreed to convey to him the smaller of the two farms, comprising 120 acres. Certain other facts are recited in the former opinion, which were developed in the instant case, and will be repeated here. Both cases were dismissed for the reason that the allegations of the complaints were not sufficiently established by the testimony, and the separate decrees in those cases were affirmed on the appeal to this court on the former appeal, for the reason that we were unable to say that the findings of fact by the court were against the preponderance of the evidence.

The decrees mentioned were rendered Feb. 1, 1946, but before they had been decided by this court, appellant filed on April 1, 1946, the claim which is the basis of this suit. In this claim it was alleged that the intestate, claimant's father, was indebted to him in the sum of $40,000 for services rendered by him to his father. Many witnesses testified and a large record was made on the hearing of this claim. Practically the same witnesses testified at that hearing as had testified at the original trial and in the final decree from which is this appeal, the court approved the action of the administrator in disal-

lowing the claim. The court made only the general finding that the testimony was insufficient to support the claim.

No formal plea of *res judicata* was interposed, but it is insisted that the original decree which this court affirmed on June 30, 1946 (*Harris* v. *Whitworth, Adm., supra*), is conclusive of this litigation, for the reason that substantially the same testimony was heard at the first trial which was offered at the second trial.

The holding and the effect of the former opinion was that appellant had not established the existence of a partnership with his father, nor had he proved a contract with his father to convey to him the smaller farm. There was no finding as to what services appellant had rendered his father, or the value thereof, as the pleadings did not raise that issue. It is true that practically the same testimony was offered in both cases to obtain the relief prayed in each case, but it is true also that the relief now prayed was not asked in the former case. It is true also that the parties were not the same. In appellant's first suit the administrator only was a party, and in his suit for specific performance, the administrator was not a party.

At the time of the filing of the suits first mentioned and at the time of the rendition of the decree by the Chancellor, in those cases, no claims had been filed with the administrator as provided and required by §§ 101 and 105, Pope's Digest, for the allowance of a claim against an estate. These statutes provide the procedure where one seeks to enforce a claim against an estate and their provisions had not been invoked until the present suit was filed.

At § 1256, p. 847, 34 C. J., it is said: "Causes of action which are distinct and independent, although growing out of the same contract, transaction, or state of facts, such as a claim for a sum due for work performed under a contract and a claim for damages for its breach, may be sued upon separately, and the recovery or judgment for one of such causes of action will not bar subsequent actions upon the others." Among the numerous cases cited in the note to this text are our cases of *Davis* v. *Dickerson*,

137 Ark. 14, 207 S. W. 436, and *Warmack* v. *Askew,* 97 Ark. 19, 132 S. W. 1013. In the case last cited a suit was brought upon two promissory notes. The defense interposed was that the notes were given for the purchase price of a patented article, which were void, for the reason that they did not show that fact upon their face. After the expiration of three years from the date of same, the plaintiff amended his complaint to sue on the account. It was held that the amended complaint stated an entirely new and distinct cause of action, and was barred by the Statute of Limitations, notwithstanding the fact that the original suit was filed within three years after the cause of action accrued. In the opinion last cited it was said:

"In the case of *Roth* v. *Merchants' & Planters' Bank,* 70 Ark. 200, 66 S. W. 918, 91 Am. St. Rep. 80, the court held that the failure to comply with the statute in regard to the execution of a note given for a patented machine, implement, substance or instrument does not affect the validity of the sale, but only renders the note absolutely void; and that an adverse judgment in a suit on the note is no bar to an action upon the contract of sale. See, also, *Tillman* v. *Thatcher,* 56 Ark. 334, 19 S. W. 968."

In the Roth case, *supra,* Judge BATTLE quoted from the case of *Russell* v. *Place,* 94 U. S. 608, 24 L. Ed. 214, as follows: "To render the judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be cancelled was necessarily tried or determined,—that is, that the verdict in the suit could not have been rendered without deciding that matter; or it must be shown by extrinsic evidence, consistent with the record, that the verdict and judgment necessarily involved the consideration and determination of the matter."

Following that statement Judge BATTLE then said: "In *Shaver* v. *Sharp County,* 62 Ark. 78, 34 S. W. 261, it is said: 'That which has not been tried cannot have been adjudicated. . . . That which is not within the scope of the issues presented cannot be concluded by the judgment.' See, also, *Dawson* v. *Parham,* 55 Ark. 286, 18 S. W. 48; *McCombs* v. *Wall,* 66 Ark. 336, 50 S. W. 876;

*Cromwell* v. *County of Sac,* 94 U. S. 351, 24 L. Ed. 195; *Davis* v. *Brown,* 94 U. S. 423, 24 L. Ed. 204.

"The same rule obtains as to cross-claims, set-offs and recoupments. The defendant in an action against him is not bound to set up such claims, if he has them, but it is generally optional with him to do so or not. *Mc-Whorter* v. *Andrews,* 53 Ark. 307, 13 S. W. 1099; 21 Am. & Eng. Enc. Law (1st Ed.) 224, and cases cited."

The cases of *Davis* v. *Dickerson, supra,* and *Gray* v. *Bank of Hartford,* 137 Ark. 232, 208 S. W. 302, are to the same effect. A headnote to the case of *Whitmore* v. *Scoggin,* 147 Ark. 236, 227 S. W. 610, reads as follows: "The dismissal of a suit in equity to compel specific performance of a contract will not bar an action at law to recover damages for breach of such contract; the issues in the two actions being different."

At § 1227, p. 806, 34 C. J., Chapter on Judgments, it is said: "Where a plaintiff is defeated in an action based upon a certain theory of his legal rights or as to the legal effects of a given transaction or state of facts through failure to substantiate his view of the case, this will not as a rule preclude him from renewing the litigation, without any change in the facts, but basing his claim on a new and more correct theory. This rule applies where plaintiff bases his claim in the second suit upon a different right or title from that set up in the first action, provided the two titles are so inconsistent that they could not both have been brought forward in the same action; where he alleges a different ground of liability on the part of defendant, where he fails to establish defendant's liability under a written instrument, and afterward seeks recovery as on a resulting trust or on the ground of fraud or mistake; where, having failed to establish a specific lien on property, he sues again on the ground of the personal liability of defendant; where, having sued for the price of property and failed to prove a sale, he brings a new action for its use or detention, where an unsuccessful attempt to enforce a liability under a statute is followed by an action to hold the same defendant liable on the same facts as at common law or *vice versa,* where two

actions are brought under different statutes, or where, after an adverse decision in an action brought under a state law, plaintiff sues in the state court under a federal law. And a similar rule obtains in equity; where the equities of a second bill are materially different from the first, although the origin of both is the same, the adjudication of the first is no bar to the second.''

A number of our cases on the subject are cited and reviewed in the case of *Hicks* v. *Norsworthy,* 176 Ark. 786, 4 S. W. 2d 897, where it was held that the unsuccessful attempt of a husband to show that he was the absolute owner of a tract of land did not thereby preclude him from later asserting that he had an estate by curtesy in the land. After stating that under the provisions of the code a defendant in an action at law must interpose all defenses legal and equitable that he has, the court proceeded to say: ''That is true, and if the plea of *res judicata* was made against the person who was defendant in the former suit, he would have had to interpose all the defenses he had in the former suit. But certainly plaintiff was under no obligation to bring a suit alleging that he was entitled by curtesy because his wife owned the property, when his suit was based on the claim that he himself was the owner of the property.'' See, also, *Hatch* v. *Scott,* 210 Ark. 665, 197 S. W. 2d 559, and *Dumas* v. *Smith,* 210 Ark. 1057, 147 S. W. 2d 1013.

The present suit is based upon a claim for services performed and while it was shown in the former cases that services were performed, the only questions in issue on the former appeal were whether or not there was a contract to convey an interest in land and also whether a partnership contract existed.

We conclude, therefore, that the appellant having failed to establish an express contract and having mistaken the proper action he should have brought, he yet has the right to prosecute the claim in which he seeks to recover against the estate on a *quantum meruit* basis.

The record in the instant case is a very voluminous one as twenty-one witnesses, including appellant, testified in his behalf, and the testimony of thirteen witnesses

was heard in opposition. There are many conflicts in this testimony which cannot be reconciled, but there are certain facts which are established by the undisputed testimony, or by the great preponderance thereof. One fact which is not disputed is that for a number of years appellant performed services for his father, of great value, and the testimony shows that these services were rendered upon the expectation that he would be compensated. Indeed the expectation arising out of an implied, if not an express promise to pay, is not denied. The contention is not that they were not to be paid for, but rather that payment had been made as the services were performed.

In the case of *Wilson* v. *Dodson,* 203 Ark. 644, 158 S. W. 2d 46, it was said that where a suit is brought by a child for services rendered the parent, the burden is upon the child to prove that they were of such extraordinary character that the parent would not expect the child under such circumstances to render such services without compensation. They must be of the nature that they could not be attributed to any filial duty or obligation. This family doctrine rule invoked by appellee which if applicable would deny appellant compensation has no application here for the following reasons among others.

Appellant was not a child, but was a man over fifty years old, and had a family of his own who, however, did not reside with him at all times. While appellant resided on his father's farm, the home was his. The testimony shows that as appellant's father advanced in years, after the death of his wife in 1920, he depended more and more upon appellant until finally appellant apparently had sole control of the farms and livestock which the decedent owned. So complete was appellant's control of the farm and livestock that a neighbor testified that he supposed appellant was the owner. He sold the cattle in market, made settlements with tenants and with day laborers. The testimony shows that he gave close and efficient attention to his father's affairs. He arose early and worked until late in the day and frequently into the night. He did the blacksmith work and performed many other labors which mere filial duty or obligation would not have required. He was paid no fixed wages or salary, but was

given such money as his personal and household expenses required.

There was testimony that decedent said he had paid appellant as he did other laborers, but this testimony if competent is not to be credited. Appellant's mother was afflicted with tuberculosis and it became necessary for her to reside in a higher altitude, which involved such expenses that decedent placed a mortgage on one of his farms in 1921, and it was eleven years before any part of the principal was paid. After appellant apparently had taken over the management of his father's business, the financial condition of decedent substantially improved until at the time of his death the mortgage had been discharged, and a valuable personal estate had been accumulated. According to appellant this had all been done under a contract with his father which made him an equal partner in his father's operations. The opinion in the former appeal is conclusive of the fact that no such contract existed, but it is not conclusive of the fact that the services were rendered without expectation of payment, or that payment had been made. A Mrs. Meharg testified that she always paid her rent to appellant and further, ''I thought I was devoted to my parents, but nothing like he (appellant) was to Uncle Charlie (as decedent was commonly called). Ancel (appellant) had the duty of looking after him (decedent) as well as looking after the business.'' Appellant gave testimony as to his contract and relationship with his father, and as to the services rendered pursuant thereto and their value. The competency of this testimony is one of the principal questions discussed in the briefs of opposing counsel. Appellant says the decree from which is this appeal could not have been rendered unless this testimony is entirely disregarded and he apparently makes the concession that his case is dependent upon this testimony.

Upon the authority of the case of *Campbell* v. *Hammond,* 203 Ark. 130, 156 S. W. 2d 75, we hold that the testimony of appellant was in fact incompetent, but we do not concur in the view that appellant's case was dependent upon his own testimony. The incompetency of appellant's own testimony is conceded, but it is contended

that the incompetency was waived by the introduction of testimony on the part of appellee as to the transactions between appellant and his father. Section 5154, Pope's Digest, reads as follows:

"In civil action, no witness shall be excluded because he is a party to the suit or interested in the issue to be tried. Provided, in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party."

The provisions of the statute may be waived, and it was held in the case of *Lisko* v. *Hicks,* 195 Ark. 705, 114 S. W. 2d 9, that they were waived when testimony in contravention of the statute was offered and admitted without exception thereto when offered. Here the testimony was objected to when offered, but it is insisted that appellee made the provisions of the statute inapplicable by offering testimony contravening the statute, but we do not so understand the record. Appellant offered the testimony of witnesses, not parties to the suit, who were fully competent to testify, tending to show a contract between himself and his father, and it was therefore competent for appellee to offer testimony of other witnesses, not parties to the suit, and therefore competent, to testify to refute this testimony without waiving the inhibition of the statute.

However, it was held in the Campbell case, *supra,* that: "It is true that the probate court is still a court of law as was held in *Young* v. *Young,* 201 Ark. 984, 147 S. W. 2d 736, where we said: 'Although probate courts are presided over by the chancellor, they continue to be courts of law.' But this fact does not preclude us from trying such cases *de novo* under said amendment," No. 24, which amendment conferred probate jurisdiction upon the chancery courts.

Appellant's concession, if indeed he intended to concede, that his case was dependent upon his own testimony, does not prevent us from trying the case *de novo.*

That duty remained, the concession to the contrary notwithstanding, and in our opinion the testimony apart from that of appellant himself, abundantly supports the finding which we make, that appellant's services were performed under the expectation of payment and pursuant to the promise of compensation. *Williams* v. *Walden*, 82 Ark. 136, 100 S. W. 898. The testimony of a number of witnesses, not parties to the suit, is to the effect that decedent recognized his obligation to appellant and contemplated compensating him in addition to what he had been paid.

The preponderance of the testimony is that appellant's services were reasonably worth as much as $150 a month, in addition to his necessary living expenses which had been paid, and we think he should have judgment for that sum, totaling $1,800 per year, but this recovery should be for only three years, § 8928, Pope's Digest, a grand total of $5,400.

The judgment of the court below will, therefore, be reversed and the cause remanded with directions to render judgment in appellant's favor for $5,400 and all cost of the suit.