JAMES *v.* JAMES.

4-9247                                    233 S. W. 2d 75

Opinion delivered October 16, 1950.

*A. D. Chavis,* for appellant.

*Brockman & Brockman,* for appellee.

DUNAWAY, J. This cause arose as a suit by Robert James, against his wife, Carrie James, to have a resulting trust declared as to certain real property in Pine Bluff, Arkansas, legal title to which was held by Carrie James. She answered, denying all allegations in the complaint, and filed a cross-complaint seeking a divorce. Robert James has appealed and Carrie James has cross-appealed from the action of the Jefferson Chancery Court in regard to the property. The court's action in granting a divorce is not questioned.

The decree appealed from reads in part as follows:

"The court, being well and sufficiently advised as to all matters of fact and law arising herein and the premises being fully seen, finds that the plaintiff Robert James and the defendant Carrie James were married

March 1, 1944, and lived and cohabited together as husband and wife until October 10, 1947; that prior to the date of the separation the following described real property, situated in Jefferson County, Arkansas, was purchased, the deeds thereto placed the legal title to said property in Carrie James, to-wit:

"The East half (E½) of Lot Four (4) in Block Twelve (12) of Geisreiter's Sub-division of a part of the Northeast fractional quarter of Section 31, Township 5 South, Range 9 West of the 5th P. M.

"The court finds that the plaintiff Robert James contributed one-third of the purchase price paid for said land and that a lien should be impressed upon said land to the amount of one-third of the value of said land as his interest therein.

"That the defendant Carrie James should be awarded as dower in the interest awarded to Robert James a sum equal to one-third of the value of said interest. Said dower interest to equal one-ninth of the value of said property. That said land is not susceptible of a division in kind.

"That the defendant Carrie James is entitled to a decree of divorce on her cross-complaint."

The only real issue to be decided is whether the evidence supports the findings of the Chancellor.

From the testimony these facts were established: Appellant and appellee met in June, 1942, when appellee came from her home in Hot Springs, Arkansas, to visit her son in Pine Bluff. The son boarded at a combination cafe and rooming house operated by appellant. After a brief return to Hot Springs, appellee came back to Pine Bluff in August, 1942, and took up residence at appellant's establishment. She assumed the management of the cafe and rooming house, and he went to work at the Pine Bluff Arsenal.

Some time after appellee's return to Pine Bluff, negotiations were started for the purchase of the property now in controversy. It was owned by the widow and

heirs of one Joe Alexander, deceased, subject to a mortgage held by the estate of E. P. Ladd and a tax title held by Shaffer Haley. On April 7, 1943, appellee (then Carrie Doss) purchased the tax title of Haley for the sum of $123.19, and received a quitclaim deed from him in which she was named as grantee.

On the same date the initial payment was made to R. A. Zebold, administrator of the Ladd estate, on the unpaid balance of the mortgage debt which then totalled $366.99. Thereafter partial payments on the mortgage indebtedness were made at various times to Mr. Zebold, who gave receipts in each instance in the name of Carrie Doss.

Upon final payment to the Ladd estate on September 3, 1943, Mr. Zebold had prepared a deed for the Alexanders, conveying the property to Robert James, and a note to be paid by Carrie Doss for $433.01, the balance due the Alexanders on the purchase price. Neither this deed nor note was ever executed. Some time later, a deed to Carrie Doss was executed by the Alexanders, but was not delivered until October 16, 1945, when Carrie Doss paid in full the amount then due. Prior to this payment and delivery of the deed, the Alexanders had obtained judgment against Carrie Doss and Robert James in a suit instituted against both to collect the balance of the purchase price.

Appellant and appellee were married on February 3, 1944, and lived together as husband and wife until shortly before the filing of the complaint in this action on October 28, 1947. There was some dispute as to the exact nature of their relationship prior to their marriage.

Except as already stated, the testimony on behalf of the parties to this action was in irreconcilable conflict. Appellant's testimony was to the effect that he initiated the purchase of the property in question and furnished all of the money with which it was bought; that appellee was at all times acting as his agent in making the payments in connection with the purchase; and that he did not discover until their estrangement in October, 1947,

that title had been taken in appellee's name rather than his own.

Appellee in turn sought to prove that she was acting only for herself in buying the property; and that the purchase price was paid entirely out of her own funds, partly from her earnings and partly through a loan from her son. Receipts, bank statements, and tax receipts were introduced by appellee in support of her claim.

In order to prevail in this action to establish a resulting trust for his benefit it was incumbent upon appellant to show that he had furnished the purchase money. *Lasker-Morris Bank & Trust Co.* v. *Gans,* 132 Ark. 402, 200 S. W. 1029; *Lisko* v. *Hicks,* 195 Ark. 705, 114 S. W. 2d 9.

It would serve no useful purpose to detail the voluminous testimony presented by each litigant in support of the conflicting contentions made as to the source of the purchase money. The Chancellor, who saw and heard the witnesses, has made a finding that the funds were provided, one-third by appellant, and two-thirds by appellee. We cannot say this finding is against the preponderance of the evidence.

The decree is affirmed on direct appeal and on cross-appeal.