COLE v. WILLIAMS.

4-8872                                                    220 S. W. 2d 821

Opinion delivered May 30, 1949.

*Ralph Morrow, Charles Jacobson, J. R. Booker* and *Jno. S. Gatewood,* for appellant.

*Chas. B. Thweatt, Harold Flowers* and *Phillip Mc-Nemer,* for appellee.

HOLT, J. The parties to this litigation, which involves the title to a 160 acre farm in Lonoke county and six lots in England, Arkansas, are all Negroes.

Appellants are the only heirs of Scipio A. Jones and Lillie M. Jones, his wife. Jones was a practicing attor-

ney in Little Rock until shortly before his death in 1943. His widow became executrix of his estate and filed her final report June 5, 1945, and was discharged. Lillie Jones died intestate August 6, 1945, and her administrator filed his final report April, 1948, and was discharged.

Appellants began the present suit in ejectment April 24, 1948, against appellee, John Williams, and by agreement, the cause was transferred to equity.

The complaint alleged, in effect, title in appellants to all the property involved by virtue of (1) a Commissioner's deed in 1928 to Lillie M. Jones following sale of the property in a foreclosure suit by the Bank of England against Williams, (2) by a court order in 1938, in which it was directed, in a judicial sale to enforce a certain mortgage lien of G. W. Morris, that such sale should not foreclose any interest of Lillie Jones in the property, and (3) a certain court order in 1941 in a foreclosure suit of the Federal Land Bank of St. Louis against Williams, finding that Lillie Jones is the "owner and title holder of record" of said property.

It is further alleged that Lillie Jones "permitted defendant (John Williams) to occupy and farm the property, keep it up and pay the taxes and interest, for said use and occupancy."

Appellee answered denying that appellants had title, or any right to the possession, and alleged specifically that he was the beneficial owner of all of said property and that on account of the relationship and an agreement between him and his attorney, Scipio Jones, an implied trust existed and that the title of appellants, as heirs of Lillie Jones, is that of a trustee only. His prayer was that title to all property involved be quieted and confirmed in him, appellee, free of all claims of appellants.

September 3, 1938, the heirs of G. W. Morris, deceased, filed intervention alleging, in effect, that on December 3, 1930, appellee, Williams, and wife, executed and delivered to G. W. Morris a mortgage on the land involved to secure payment of a debt; that this mortgage was foreclosed in 1938 and the decree revived in 1948

in the case of Morris v. Williams; that no sale was had under these decrees, and that there is pending in that case petition for order of sale and foreclosure of all rights of the heirs of Lillie Jones and prayed that this foreclosure suit of Morris v. Williams be consolidated with the present suit for the purpose of trial only.

The trial court consolidated the cases for the purpose of trial and found, in effect, that a trust relationship existed, that the legal title of the heirs of Lillie Jones is that of a trustee only and that appellee, Williams, is the beneficial owner of the property involved, and devested all title out of appellants, Lillie Jones' heirs, and vested same in appellee subject to all rights of the intervening heirs of G. W. Morris, as adjudged in a separate decree the same day rendered in said case of Morris v. Williams.

This appeal followed.

Appellants say: ''The sole issue for determination on this appeal is whether Lillie M. Jones, the record owner, held title for the benefit of appellee, his contention being that a resulting trust existed in his behalf.''

The essential facts, in addition to what has been said before, were: Scipio Jones was appellee's attorney. There was a stipulation to the effect that G. W. Morris died intestate August 14, 1941, his estate administered, closed, and interveners are his sole heirs, that the property involved was a 160 acre farm in Lonoke county and six lots in England.

''December 1, 1925, John and Ella Williams mortgaged said lands to Norman as trustee for Bank of England to secure a loan of $2,300. This trust deed was foreclosed.'' The property sold to Lillie Jones for $1,354.37, the sale approved and confirmed and deed executed to Lillie Jones on March 23, 1928, and recorded.

That ''on June 1, 1919, John Williams executed to Federal Lank Bank of St. Louis a mortgage (on farm land involved) all in Lonoke county, Arkansas, to secure the payment of a note for $6,000 bearing interest at the rate of 5½% per annum, payable in 68 equal semi-annual

installments of $195 each and one installment of $194.81 due on each December 1 and May 1 thereafter until said note is fully paid.''

''On June 1, 1923, John Williams executed a deed of trust to a trustee for Mosaic Templars of America, which was filed for record June 22, 1923, is recorded in Book 77 at page 417, and conveys all of said land and Lot 21, Block 21, Lots 16, 17, 18, Block 66 and Lots 11 and 12 and south half Lot 9, Block 67, Town of England, to secure the payment of a note for $6,489, bearing interest at the rate of 7% per annum, payable $2,163 on June 1 of each of the years 1924, 1925, 1926; his wife, Ella Williams, joined him and released all her dower and homestead rights in each of said conveyances.

''The above two conveyances constituted the only liens of record against said land at the time of the sale of said land to Lillie M. Jones on March 10, 1928, at the price of $1,354.37, by the commissioner in Chancery pursuant to the foreclosure decree of December 30, 1927, in the case of Bank of England v. John Williams, et al, and at all times thereafter until after commissioner, on March 23, 1928, executed a deed conveying all of said land to Lillie M. Jones pursuant to said sale, and until after said deed was acknowledged and filed for record on December 22, 1928.''

Mr. Meurer, the representative of the Federal Land Bank, testified that the balance due on the Land Bank mortgage, June 20, 1948, was about $3,200. The gross value of all the property here involved was approximately $24,000 in 1928 when it sold to Lillie Jones, as indicated, for $1,354.37.

The only liens against the property at that time were the amount due the Land Bank and approximately $2,220 unpaid balance on the mortgage to Mosaic Templars.

On or before the date (December 22, 1928) on which Lillie Jones recorded her commissioner's deed, supra, at Jones' direction, she borrowed $3,750 from the Commonwealth Building & Loan Association, giving as security a mortgage on Lot 21, supra. It is significant that the

commissioner's deed to Lillie Jones and the mortgage to the Building & Loan Association were filed on the same day.

While she paid only $1,354.37 for all the land involved under the foreclosure sale, this record does not disclose what she did with the balance of $3,750, supra, amounting to a little less than $2,400.

The record reflects that Williams had given three mortgages to the Bank of England, one in 1924 for $2,330 and one March 5, 1925, for $2,300, both of which were satisfied of record December 21, 1928. The third mortgage for $2,300 dated December 1, 1925, is the one foreclosed here. Whether the second and third mortgages were renewals of the first, the record does not disclose.

The Building & Loan Association foreclosed its mortgage and acquired title to Lot 21.

Appellee, Williams, testified, in effect, that Jones had been his attorney and advisor for some time prior to the Bank of England's foreclosure suit, supra, represented him at this foreclosure and continued as his attorney until his death. He further testified that under the terms of an agreement which he had with Jones, that he, Jones, was to purchase all the land at the foreclosure sale in Lillie Jones' name, arrange to borrow $1,354.37 on the land, and hold title for Williams until the Federal Land Bank mortgage was fully paid and that they would then have a settlement.

He further testified that he knew nothing of the $3,750 mortgage, supra, until the filing of the present suit, that he, Williams, at all times mentioned in this case has been in possession and control of the farm land and of the lots involved, has never paid any rent, has paid all taxes, and all amounts due on existing mortgages. He further testified that some of the town lots forfeited for certain improvement district taxes and that Jones procured two quitclaim deeds from the district, one was made to Williams and his wife, and the other to his son, and that while Scipio and Lillie lived, neither has questioned appellee's ownership.

Mr. Meurer, the Land Bank representative, further testified that on more than one occasion, Scipio and Lillie told him, "he (Scipio) said that John Williams owed him or owed his wife some money, that when John Williams had paid this money she would re-convey to John Williams."

There appears to be no evidence of any debt from appellee to Lillie Jones.

Following Lillie Jones' death, August 6, 1945, her administrator filed on separate dates, an original and a supplemental inventory of her estate, and in neither of them was there listed any of the property involved here nor any debt from Williams.

After reviewing the facts presented, we have concluded that the evidence (record and oral) was sufficient, and of that clear and convincing character, to establish an implied or constructive trust on behalf of appellee, Williams, that Lillie Jones, during her life, held the legal title for Williams' benefit, and after her death, her heirs so held it for Williams' benefit, with the trust imposed upon it.

It is well settled that an agreement creating an implied or resulting trust may be shown by oral testimony. *Bray v. Timms,* 162 Ark. 247, 258 S. W. 338, and *Beloate v. Taylor,* 202 Ark. 229, 150 S. W. 2d 730.

This court held in *Moore, et al. v. Maxwell, et al,* 18 Ark. 469, that where the decedent held title in trust, upon his death, his heirs held it, charged with the same trust.

Upon the death of the trustee, the trustee's heirs are vested with the estate subject to the trust. *Badgett and Wife v. Keating and Wife,* 31 Ark. 400.

"Generally speaking, a trustee who * * * repudiates the trust, claiming title as absolute owner, forfeits his right to compensation." *McHenry v. McHenry,* 209 Ark. 977, 193 S.W. 2d 321.

In this case, we find no evidence of any fraud, attempted or practiced by Jones on his client, Williams.

We think the evidence clearly shows that Jones intended to carry out the agreement which the evidence establishes he had with Williams, and that death prevented his doing so.

In regard to appellants' claim of title alleged, supra, as resulting from the court order of 1938 in the case of Morris v. Williams, in which Jones was Williams' attorney, and directing a judicial sale to enforce the mortgage lien of Morris in which order it was recited, in effect, that such sale should not foreclose or effect any interest of Lillie Jones in said property, little need be said. This order did not attempt to decide what interest Lillie Jones had in the property nor was there any issue in that case between Lillie Jones and Williams.

As to the court order of May 23, 1941, which was made in the foreclosure suit of the Federal Land Bank against Williams, the record reflects that this order was based on the report of Robert Meurer, receiver. The order did not adjudicate the beneficial ownership of Williams, but recited that Lillie Jones is "the owner and title holder of record" of the property. As has been indicated, appellee does not contend that Lillie Jones did not hold the record title. There was no issue in that proceeding between Lillie Jones and appellee, Williams, as to title, the only matter presented being Meurer's report.

"That which has not been tried cannot be said to have been adjudicated * * *. That which is not within the scope of the issues presented cannot be concluded by the judgment." *Harris v. Whitworth, Administrator,* 213 Ark. 480, 211 S.W. 2d 101.

Finding no error, the decree is affirmed.