Letha DAVIS, Individually and as Executrix of the Estate of C.G. Davis, Deceased, et al. *v.* W.A. GRIFFIN, et al.

89-38                                                          770 S.W.2d 137

Supreme Court of Arkansas
Opinion delivered May 15, 1989

*Woodward and Epley*, for appellants Letha Davis and Charles Brandon.

*Kinard, Crane & Butler, P.A.*, for appellants Georgia Daniel Anderson and Robert W. Anderson, her husband; and Joe M. Daniel and Erma Daniel, his wife.

*Smith, Stroud, McClerkin, Dunn & Nutter*, for appellees.

TOM GLAZE, Justice. This appeal originated from an interpleader action by UPC Falco to determine the ownership of royalty interest in the oil the company was purchasing. The oil was produced from wells located on land originally owned by J.M. Daniel. Daniel died intestate and was survived by his widow Estherlee Wellborn and eight children, from three different marriages.[1] Under our intestate laws, Daniel's descendants received his estate subject to the widow's dower and homestead rights. In October of 1935, Wellborn and Daniel's descendants signed an instrument entitled "Agreement," which provided that Wellborn agreed to receive a one-ninth interest in all royalties, rentals, purchase price and other returns derived from any oil and gas lease in lieu of her dower and homestead rights in any oil or

---

[1] Since the time of J.M. Daniel's death, his widow has remarried. For clarity purposes, she will be referred to by her new married name, Wellborn, throughout the opinion.

gas lease, royalty or mineral deed. In 1959, Wellborn conveyed mineral interests in royalty deeds to C.G. Davis, who later conveyed one-half of his interest to John McDonald. Wellborn, Davis and McDonald are now deceased.

In the interpleader action, the chancellor was asked to interpret what interest was conveyed to Wellborn by the "Agreement." The chancellor found that the instrument did not convey a fee simple interest in the mineral rights to Wellborn and therefore any interest she had terminated upon her death. The personal representatives of Davis and McDonald along with Daniel's and Wellborn's two children appeal from this finding. The appellees are the rest of Daniel's descendants. We affirm.

In reviewing instruments, this court's first duty is to give effect to every word, sentence and provision of a deed where possible to do so and give effect to the intention of the parties. *Constant* v. *Hodges*, 292 Ark. 439, 730 S.W.2d 892 (1987). Since an instrument conveying oil and gas interests is viewed as a conveyance of an interest in land, it is subject to the same formalities. *See Helms* v. *Vaughn*, 250 Ark. 828, 467 S.W.2d 399 (1971). Although formal words are not required, a deed must contain sufficient words to convey the interest. *See Harper* v. *McGoogan*, 107 Ark. 10, 154 S.W. 187 (1913); *Malin* v. *Rolfe*, 53 Ark. 107, 13 S.W. 595 (1890). In *Griffith* v. *Ayer-Lord Tie Co.*, 109 Ark. 223, 159 S.W. 218 (1913), this court stated that in order to convey legal title, it was absolutely necessary that there be words expressing the fact of a sale or transfer of the title, such as the words "grant, bargain and sell." *See also* Ark. Code Ann. § 18-12-102(b) (1987).

In our case, the part of the "Agreement" which should contain the granting language provides in pertinent part the following:

> Now therefore for and in consideration of the sum of $1.00 cash in hand paid by parties of the first part (descendants of Daniel) to the second part (Wellborn), the said party of the second part does hereby agree that if and when a lease or royalty or mineral deed for oil, gas and other minerals shall have been executed by the parties hereto, . . . that in lieu of such sums as party of the second part would have received under such lease for oil and gas . . . that she shall

receive thereunder a one-ninth interest.

As one can clearly see from the above language, no words of conveyance are present. Therefore, we find the instrument void of language necessary to convey a fee simple interest.

■ In addition to requiring sufficient words to convey a fee simple interest, our law requires courts to give effect to the parties' intent, if possible, when construing an instrument. *See Schnitt* v. *McKellar*, 244 Ark. 377, 427 S.W.2d 202 (1968). We are to acquaint ourselves with the persons and circumstances and place ourselves in the same situations as the parties who drafted the instrument. *Id.* We believe that the parties' intent in our case supports the finding that there was no conveyance of a fee simple interest.

■ From the language of the instrument itself, we are told that the parties wanted to settle what share Wellborn would receive from any proceeds from oil and gas leases, royalties, and mineral deeds, so that the parties could be in a position to lease the lands without delay.[2] Importantly, the instrument also contained the following language: "It being understood that this instrument in no way affects the dower and homestead rights of [Wellborn] in said lands except as to leases, royalty or mineral deeds to be executed and the proceeds to be derived therefrom." We believe this language strongly reflects that the parties' intent was only to come to an agreement on how much Wellborn would receive from the proceeds of the mineral rights. Accordingly, we conclude that only Wellborn's dower and homestead interest in proceeds from leases, royalties and deeds were affected by the instrument. She retained her dower and homestead rights to the undeveloped mineral estate and in the land itself. The fact that these dower and homestead rights were purposely not affected clearly shows that the parties could not have intended a conveyance of a fee simple estate.

In reviewing the parties' circumstances and the instrument

---

[2] The appellants strongly rely on the fact that Wellborn made conveyances of mineral rights in 1959 to show that she thought that the instrument conveyed a fee simple interest. In light of the lack of words of conveyance and the language of the instrument itself, we do not find this fact persuasive.

they drafted, we must affirm the chancellor's construction of the instrument as only defining what Wellborn would receive in lieu of her dower and homestead and not as a conveyance of an absolute estate to one-ninth interest in the mineral rights.

For the reasons stated above, we affirm.