Mark JOHNSON and Catherine Johnson *v.* Richard RAMSAY and Clair Ramsay

CA 01-404                                    67 S.W.3d 598

Court of Appeals of Arkansas
Division II
Opinion delivered February 27, 2002

486

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *Susan Gordon Gunter*, for appellants.

*Richard L. Ramsay*, for appellees.

LARRY D. VAUGHT, Judge. This is a lawsuit between adjoining landowners in a Little Rock neighborhood. Appellees Richard and Clair Ramsay claim that a document executed by their predecessors-in-interest in 1948 created an easement in their favor

in a gravel drive located along the southern border of their lot. The drive is located between the Ramsays' lot and a lot owned by appellants Mark and Catherine Johnson. The Johnsons contend that the Ramsays are not entitled to an easement in the drive because the 1948 document did not contain sufficient words of conveyance to create an easement and because the Ramsays' predecessors abandoned the easement. The chancellor found against the Johnsons on both of those issues, and we affirm.

The Ramsays' house is situated on a large lot, facing west toward Broadview Drive. A sixteen-foot-wide gravel drive abuts the approximately 212-foot southern border of the lot. Directly across this drive are side-by-side lots owned by Sally Powell on the west and the Johnsons on the east. The lots are situated in such a way that the Powell front yard overlooks the Ramsay side yard, and the Johnson front yard overlooks the Ramsay back yard. The gravel drive is actually located on the Powell and Johnson properties and runs as a sixteen-foot wide strip along their northern borders.

In 1948, a document entitled "Easement Agreement" was entered into by four landowners and their spouses, all of whom owned property in the neighborhood under discussion in this case. The landowners included G.E. and Margaret Jernigan (the Ramsays' predecessors), and Samuel and Georgia Boyce (the Johnsons' predecessors). The easement was designated for the purpose of ingress and egress. It was described in the document as L-shaped, and it included what is now Broadview Drive as its north-south segment and the sixteen-foot wide drive as its west-east segment. In 1957, the Broadview Drive portion of the easement was dedicated to the city; the sixteen-foot wide drive was not dedicated and remained in use by the landowners.

In the late 1980s, the property that is now the Ramsay lot was owned by Charles and Joann Jernigan, the son and daughter-in-law of G.E. and Margaret. Charles and Joann built a fence along the southern border of the property, just north of the gravel drive. The fence did not run the full length of the border; an opening of approximately forty feet remained between the eastern end of the fence and the eastern end of the lot. When the Ramsays purchased the property from the Jernigans in 1998, they hoped to construct a garage in their back yard and use the gravel drive and the opening beyond the fence to gain access. The Johnsons objected to the Ramsays' proposed use, as well as to the presence of a dog pen in the Ramsays' back yard, and, in November 1998, they constructed

a fence along the northern border of the gravel drive that over-lapped the Ramsays' fence, thus preventing the Ramsays from gaining vehicular access to their backyard. The Ramsays filed suit seeking a declaration that they were entitled to an easement in the gravel drive and an order requiring the Johnsons to tear down their fence. The chancellor granted them that relief, and the Johnsons filed a timely notice of appeal.

■ We review chancery cases *de novo* on appeal, but we will not reverse a chancellor's findings of fact unless they are clearly erroneous. *Wilson v. Johnston*, 66 Ark. App. 193, 990 S.W.2d 554 (1999). A finding is clearly erroneous when, although there is evidence to support it, we are left, upon reviewing the entire evidence, with the firm conviction that a mistake has been committed. *See Betts v. Betts*, 326 Ark. 544, 932 S.W.2d 336 (1996).

■ The first issue on appeal is whether the document by which the Ramsays claim their easement is legally sufficient. An easement is an interest in land, and a grant of an easement must include words expressing the fact of transfer or grant. *See White v. Zini*, 39 Ark. App. 83, 838 S.W.2d 370 (1992). Although no formal words are required, there must be some operative words expressing the fact of sale or transfer in order to convey legal title to an interest in land. *See Davis v. Griffin*, 298 Ark. 633, 770 S.W.2d 137 (1989). Mere words stating that the parties agree to an easement are not sufficient. *White v. Zini, supra.*

The 1948 Easement Agreement provided that "the easement hereby created shall be for the common use and benefit of all of the persons executing this instrument for the purpose of ingress and egress to and from any lands bordering upon said easement. . . ." The document further provided that "free and uninterrupted use of said easement is hereby granted. . . ." The wives of the landowners relinquished dower and homestead rights, and the acknowledgment portion of the instrument referred to the parties as "grantors."[1]

■ When an interest in land is conveyed, it is absolutely necessary that somewhere in the instrument there should be words expressing that fact of a sale or transfer, *i.e.*, words such as "grant, bargain, and sell," or words of the same purport. *Griffith v. Ayer-Lord Tie Co.*, 109 Ark. 223, 159 S.W. 218 (1913). The holding in *Griffith*

---

[1] Some parts of the Easement Agreement are barely legible. A re-creation of the agreement was prepared by Beach Abstract, but the quotes contained herein come directly from the legible portions of the agreement itself.

was applied in *White v. Zini, supra*, to invalidate an easement on the grounds that the parties attempted to create it through an agreement rather than a grant. Although the document in the case before us is similar to the document in *Zini* in some respects, it differs in that it refers to use of the easement as being "granted" and in the parties' acknowledgment of the instrument as "grantors." These references evidence an intention by the parties to create an interest in land through a grant or transfer rather than through an agreement. Significantly, neither the word "grant" nor any variation of it is found in the *Zini* document.

■■ Appellants argue that the references in the instrument to a grant of an easement are insignificant because they do not appear in a granting clause but rather in "explanatory clauses." However, none of the cases relied on by appellants hold that words expressing a transfer or conveyance are valid only if contained in a granting clause. In fact, such a holding would be contrary to the language in *Griffith* that granting words must be found "somewhere in the instrument." Further, instruments should be reviewed such that effect is given to every word, sentence, or provision of the instrument where possible to do so and to give effect to the intention of the parties. *See Davis v. Griffin*, supra. Viewing the language of the 1948 document as a whole, we cannot say that the chancellor's finding that the instrument created a valid easement is clearly erroneous.

The Johnsons argue next that, if an easement was created by the 1948 document, it was later abandoned. The facts giving rise to their argument are as follows. The lot now owned by the Ramsays was once owned by G.E. and Margaret Jernigan as part of a larger tract. In 1987, G.E. and Margaret had died, and their daughter, Jane Swope, wanted to subdivide the property into three lots. Swope submitted a preliminary plat to the Little Rock Planning Commission designating what is now the Ramsay lot as Lot #2, a tract to the north as Lot #1, and a tract to the east as Lot #3. Swope's plat proposed to extend use of the sixteen-foot-wide easement further east to give Lot #3 access to Broadview Drive. However, the Planning Commission would not allow the easement to be platted because it was not wide enough, nor was it paved; the subdivision plat would only be approved on the condition that the easement be removed from the plat. The Planning Commission minutes reflect that Swope decided that she "would not use the easement for access and would remove it from the [plat]." Swope submitted a final plat that contained the three subdivided lots but did not reflect the

easement at all. The Johnsons argue that, by these actions, Swope abandoned the easement.

■ ■ An easement may be lost by abandonment. *Bank of Fayetteville v. Matilda's, Inc.*, 304 Ark. 518, 803 S.W.2d 549 (1991); *Drainage Dist. No. 16 v. Holly*, 213 Ark. 889, 214 S.W.2d 224 (1948). Abandonment will be established where the owner of the easement does or permits to be done any act inconsistent with its future enjoyment. *Goodwin v. Lofton*, 10 Ark. App. 205, 662 S.W.2d 215 (1984). Mere non-use does not constitute abandonment. *Id.* Rather, the easement owner must relinquish or give up his rights with the intent of never resuming or claiming his right or interest. *Bank of Fayetteville v. Matilda's, Inc., supra.* To abandon means to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in. *Id.* Whether abandonment exists in any given case depends on the particular circumstances. *Goodwin v. Lofton, supra.*

Jane Swope testified at trial that, when she removed the easement from the plat in 1987, her intention was to give up the right to use the easement for access to Lot #3. According to her, she did not ask the city to allow easement access to Lot #2 because the easement was already being used to access that portion of the property. The engineer on the subdivision project, Robert Holloway, testified likewise that the purpose of the easement as shown on the preliminary plat was to afford access to Lot #3. He further testified that the city's refusal to plat the easement did not destroy the easement, stating that the easement would "just stay in the state that it's in already."

Swope's lack of intention to abandon the easement is further buttressed by two factors. First, the issue of using the easement to access Lot #3 was again before the Planning Commission in 1988, upon Swope's petition to subdivide that lot into two lots. Had Swope intended to abandon the easement in 1987, it is not likely that she would have asked the city to extend its use one year later. Second, the Ramsays' immediate predecessor Charles Jernigan (Jane Swope's brother) who owned Lot #2 from the late 1980s until he sold it to the Ramsays in 1998, testified that he continued to use the easement up until the time he sold the property, which contradicts the idea that the easement had been abandoned.

■ ■ In light of the abovementioned evidence, we cannot say the chancellor clearly erred in finding that the easement had not

been abandoned. Although there was some evidence to the contrary, such a conflict was for the chancellor to resolve, given his superior ability to evaluate the credibility of the witnesses. *See Betts v. Betts, supra.*

██ The Johnsons also point out that, in addition to the fact that the 1987 plat does not contain the easement, a survey commissioned by the Ramsays in 1998 does not show that the easement exists. They argue that the absence of the easement on these documents should "control." The easement's absence from the 1987 plat was explained by Jane Swope. As for its absence from the Ramsay survey, the easement is not on the Ramsay property but on the Johnson and Powell properties. The plats of those properties show the existence of the sixteen-foot-wide easement.

██ ██ The Johnsons' final argument is that the chancellor should have directed a verdict in their favor for the following reasons: 1) the Ramsays produced no evidence of the accuracy of the Beach Abstract re-creation of the Easement Agreement; 2) the Ramsays produced no evidence that the easement described in the Easement Agreement was actually located on the gravel drive; and 3) the Ramsay's produced no evidence that the fence the Johnsons constructed was actually located on the easement. When a defendant makes a directed-verdict motion in a chancery case, the chancellor should evaluate the motion by deciding whether, if the proceeding were a jury trial, the evidence would be sufficient for the case to go to the jury. *See Jones v. Abraham*, 341 Ark. 66, 15 S.W.3d 310 (2000). The court should view the evidence in the light most favorable to the plaintiff and give the evidence its highest probative value, taking into account all reasonable inferences deducible from the evidence. *Id.*

██ The Johnsons did not abstract their directed verdict motion nor any ruling by the chancellor thereon. However, we see no error on this point. The legal description of the gravel drive portion of the easement is discernible by reference to the original Easement Agreement. Further, the Johnsons point to nothing in the Beach Abstract version of the description that is not accurate. Additionally, as mentioned earlier, both the Powell and Johnson plats reflect a sixteen-foot-wide easement on the northern borders of those lots. Finally, appellant Catherine Johnson testified that the fence she and her husband had constructed was on the easement in question.

■ The Johnsons assert further that the Ramsays should be barred from relying on the 1948 document to establish a private easement because, in their complaint, they asserted only that the easement was a public easement. The record reveals that, throughout the course of the trial, the Ramsays pursued the theory that they enjoyed an easement in the gravel drive by virtue of the grant in the 1948 document. Issues not raised in the pleadings but tried with the implied consent of the parties are treated as though they had been pled. *Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). The failure of a party to move to have the pleadings conform to the proof does not affect the trial on the issue in question. *Id.*

Affirmed.

STROUD, C.J., and PITTMAN, J., agree.