POWHATAN CEMETERY ASSOCIATION *v.*
Scotty PHILLIPS

CA 04-935                                          206 S.W.3d 277

Court of Appeals of Arkansas
Opinion delivered April 6, 2005

*Dick Jarboe*, for appellant.

*Legal Aid of Arkansas*, by: *Barbara Griffin*; and *Barrett & Deacon, P.A.*, by: *D.P. Marshall, Jr.*, for appellee.

LARRY D. VAUGHT, Judge. This appeal is brought from an order granting appellee Scotty Phillips an easement across the Powhatan Cemetery, which is operated and maintained by the board of appellant, the Powhatan Cemetery Association. We affirm.

In 1877, a forty-acre tract of land in Lawrence County was deeded to B.F. Matthews, George Thornburgh, and C.T. Stuart as trustees of the Powhatan Cemetery. The tract, upon which the cemetery is still located, is divided by Highway 117, which runs from the northwest part of the tract to the southeast part. The grave sites are located east of the highway; the west side of the highway is primarily timber. Directly south of the southwestern corner of the tract lies a one-acre parcel owned by appellee Scotty Phillips. The easement at issue, which appellant contends is invalid, is a fifteen-foot-wide strip that begins at the point where Highway 117 crosses the southern border of the tract, then runs west along the southern border to appellee's property.

For more than 100 years — apparently since the deaths of the original trustees — the cemetery's business has been conducted by the Powhatan Cemetery Association Board (hereafter "the Board"). The testimony in this case indicates that, through the years, the Board has been comprised both of people who are descendants of the original trustees and people unrelated to the original trustees but who have been elected to serve. It was at a meeting of the Board on October 15, 2000, that the current controversy began.

According to Board president Rowdy Morgan, the October 15 meeting was one of two meetings ordinarily held during the course of a year. He and the Board's secretary Mary Horton testified that notice of the meeting was placed in a local newspaper and possibly announced on the radio, as was customary. None of the Board members were notified by mail or telephone. It appears that four and possibly five Board members attended the meeting, although the evidence is in conflict on this point. At least two Board members were not in attendance and did not know about the meeting.

The minutes of the meeting indicate that various items of business were discussed: appointing a new caretaker for the cemetery; rectifying a situation in which a grave had been opened by mistake; the status of recent work on the cemetery; having a sign made for the cemetery; electing a new member to the Board; and incorporating the cemetery. However, the item on the Board's agenda that is relevant for our purposes was a request by appellee and his father to obtain an easement across the cemetery's property. The minutes reflect that the following took place:

> The Phillips family asked about the possibility of an easement for a road to [appellee's] property. Different opinions were voiced about the placement of the road. Dicision [sic] was made to allow the family to place road along property line. Shorty Smith encouraged family to check into taking different route into property.

According to various persons present at the meeting, the Board in fact voted to grant the easement.

Two days after the meeting, appellee obtained the following memorandum, which was signed by Rowdy Morgan and Mary Horton:

> To Whom It May Concern:
>
> The Powhatan Cemetary [sic] Association gives easement rights to Scotty Phillips and Joe Phillips [appellee's late father] to build a road across the cemetary [sic] to their land. The decision was made at the October 15, 2000 Board Meeting. The easement was approved by all in attendance.

On the strength of this memo and in reliance on the Board's vote, appellee obtained a $6,500 loan to build a road along the easement, and he mortgaged his one acre of property to secure the loan. He also began clearing the area for the roadway.

On May 2, 2002, which was approximately eighteen months after the Board's vote, appellee's father received a letter from the Board (which, by this time, did not include Morgan or Horton) stating that he was not authorized to place a road on cemetery property, that the Board had never voted to allow the road, and that the meeting minutes to that effect were erroneous. Injunctive relief was threatened if all activity along the road did not cease.

On August 19, 2002, appellee sued to quiet title to the easement, and a bench trial was held. The testimony of the witnesses was in great conflict, particularly as to which Board members attended the October 15, 2000 meeting; whether proper notice of the meeting was given; and whether the Board actually voted to grant the easement. Ultimately, the trial court entered an order finding that: 1) the Board had the authority to grant the easement; 2) the Board actually voted to grant the easement; 3) the Board's vote could not be repudiated due to lack of notice; 4) even though the October 17, 2000 memorandum was not adequate on its face to create an easement, appellant was estopped to deny the easement. The court then established the dimensions of the easement as follows:

> an easement for a roadway exists in favor of the plaintiff Scotty Phillips, over and across the south 15 feet of the Southwest Quarter of the Northeast Quarter (SW 1/4 NE 1/4) of Section 30, Township 17 North, Range 1 East in Lawrence County, Arkansas, beginning at a point where the West right of way line of State Highway 117 intersects the South line of the SW 1/4 NE 1/4 aforesaid, and running thence West along the South line of said SW1/4 NE 1/4 to a point 20 feet West of the Northeast corner of the plaintiff's property, more particularly described [above].

Appellant appeals from the court's order and makes the following arguments: 1) the Board had no authority to convey the easement; 2) the October 15, 2000 meeting was improper due to lack of notice; 3) the conveyance of the easement was an unauthorized gift; 4) estoppel does not apply in this case.

Equity cases, such as easement cases, are reviewed de novo. *Johnson v. Ramsay*, 76 Ark. App. 485, 67 S.W.3d 598 (2002). We will not reverse a trial court's finding regarding the existence of an easement unless the finding is clearly erroneous. *Id.*, 67 S.W.3d 598. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left, upon reviewing

the entire evidence, with the firm conviction that a mistake has been committed. *Id.*, 67 S.W.3d 598.

We first address appellant's argument that the Board had no authority to grant the easement. Appellant contends that, upon the deaths of the original trustees, title to the cemetery property descended to their heirs, subject to the trust. Therefore, appellant claims, only those heirs or court-appointed successor trustees — not the Board members — had the power to convey the easement.

■ Appellant is correct that, as a general rule, upon the death of a person who holds title in trust, his heirs are vested with the estate, subject to the trust. *See Cole v. Williams*, 215 Ark. 366, 220 S.W.2d 821 (1949). However, in order to ensure that a trust may prevail rather than be extinguished due to a lack of authorized trustees, the general rule must sometimes yield when, over the course of many years, persons have assumed the mantle of trust-eeship and the court has sanctioned their doing so. The case of *Slade v. Gammill*, 226 Ark. 244, 289 S.W.2d 176 (1956), is helpful on this point.

■ *Slade v. Gammill* involved an 1848 deed in which Warner Brown conveyed property to three trustees of a cemetery. Following the deaths of the original trustees, other trustees were appointed over the years, even though the deed did not provide for successor trustees. In 1954, the trustees serving at that time conveyed certain cemetery property to an adjoining church. Thereafter, the purported heirs of Warner Brown challenged the legality of the conveyance, claiming that the trustees had no authority to make the transaction. The trial court approved the conveyance, and our supreme court upheld the trustees' authority, stating that:

> It is elementary law that a court of equity will appoint trustees in any proper case in order to prevent a failure of the trust. This was recognized by our Court in the early case of *Conway, et al., ex parte*, 4 Ark. 302 [1842]:

> "But even suppose that the ten trustees, who signed the deed, were incompetent to take, still, the other five being competent, a court of equity would not permit the trust to fail; for it is a rule in equity which admits of no exception, that a court of equity never wants a trustee. Whenever a trust is created, either by deed or will, or by operation of law, and no person is appointed trustee, equity will

follow the estate, and cause the trust to be executed. If no trustee is named, or he dies, or the trust devolves upon an incompetent person, the trust shall prevail, and the Chancellor will appoint trustees."

Again, in *Vaughan v. Shirey*, 212 Ark. 935, 208 S.W.2d 441, we said:

"It is familiar law that equity will not permit a trust to fail through the failure of the named trustee to serve, but will, in that event, appoint another trustee . . ."

When Warner Brown conveyed the cemetery to Trustees in 1848, a trust was created. So, even if [the conveying trustees] were not the duly appointed, qualified and acting Trustees of the Warner Brown Cemetery at the beginning of this suit, they certainly were such after the decree of the Chancery Court in this case, because the decree not only recognized them as the Trustees, but recites: ". . . and their appointment are approved and confirmed . . . ." Thus, the Chancery Court, which at all events had the residual power to appoint trustees, approved and confirmed the appointment of the said Trustees and likewise approved the execution of the deed which they made.

*Slade v. Gammill*, 226 Ark. at 249–50, 289 S.W.2d at 180 (citations omitted).

In the case at bar, the original deed contemplated the existence of successor trustees; it deeded the land not only to the three original trustees but to "their successors in such Trusteeship forever, with all rights and privileges there unto belonging." While the deed made no provision for the manner in which successor trustees would be appointed, the evidence at trial was that, since the deaths of the original trustees, the Board has acted as successor trustee, with vacancies being filled by a vote of the remaining Board members. As trustee, the Board has, in the words of the trial court, "laid out plots, approved burials, cared for graves and markers, communicated with funeral homes, and even granted easements to neighboring land owners." Based on this evidence, the trial court found that the Board "acted by authority derived from that original deed." Thus, although the court did not formally appoint the Board members as trustees, it found them to be qualified and acting with due authority by virtue of many years

of practice and custom, and by virtue of the deed's grant to "successors in such Trusteeship." Given these circumstances and the supreme court's holding in *Slade*, we affirm the trial court's finding that the Board had the authority to grant the easement in this case.

Appellant argues next that all Board members did not receive notice of the October 15, 2000 meeting, and, therefore, the Board's grant of the easement at that meeting was invalid. Appellant characterizes the October 15 meeting as a "special meeting" and cites 6 AM. JUR. 2D *Associations and Clubs* § 23 (2d ed. 1999) for the proposition that members of an association must be given notice of a special meeting, even though the association's bylaws are silent on the matter.

We disagree with appellant's premise that the October 15 meeting was necessarily a special meeting. Board president Rowdy Morgan testified that regular Board meetings were held twice a year, once in the fall and once in the spring. Morgan said that the October 15 meeting was the regular fall meeting. Moreover, the minutes of the meeting show that numerous items were on the agenda other than the conveyance of the easement. As for the notice that was given in this case, there was evidence that the Board had no formal bylaws pertaining to notice of meetings and that notice via newspaper and radio was the usual practice. As the trial court found:

> This is an unincorporated association of long standing which by its own choice has not promulgated by-laws or other rules defining notice requirements. . . . Mary Horton testified that the previous secretary told her to give notice of the meetings by newspaper and radio announcements, which was the procedure she followed. . . . In any case, it appears the meeting was well attended, with at least half of the board members present as well as several members of the public.

The trial court apparently believed Mary Horton's testimony regarding the customary method of notice, and we will defer to a trial court's ruling on matters of credibility. *See MDH Builders, Inc. v. Nabholz Constr. Corp.*, 70 Ark. App. 284, 17 S.W.3d 97 (2000). We therefore find no error on this point.

Appellant's third argument is that the Board, in conveying the easement to appellee without charge, made an unauthorized gift. Ordinarily, it is improper for a trustee to make a gift

of trust property. 3 Austin W. Scott and William F. Fratcher, *The Law of Trusts* § 190.10 (4th ed. 1988). However, we need not address this argument because appellant is making it for the first time on appeal. *See Parker v. Perry*, 355 Ark. 97, 131 S.W.3d 338 (2003). If the merits were addressed, however, we note that there was some testimony that the easement could provide a benefit to the cemetery in the event of future expansion to the west side of the highway. Gifts may be permitted where they are advantageous to the trust estate. 3 Austin W. Scott and William F. Fratcher, *The Law of Trusts* § 190.10.

Appellant's final argument is that the trial court erred in using the doctrine of estoppel to establish the easement. In its order, the trial court determined that the October 17, 2000 memorandum, which was signed by Rowdy Morgan and Mary Horton, did not comply with provisions in the Statute of Frauds concerning conveyances of property. *See generally* Ark. Code Ann. § 4-59-101(a)(4) (Repl. 2001). The court ruled, however, that a party may be estopped from relying on the Statute of Frauds where another has acted in detrimental reliance on an oral agreement. The court reasoned:

> The facts in this case reveal that [appellee] sought and received an agreement to allow him access to his property along the south boundary of the property owned by the cemetery association. That agreement was oral, but it also was memorialized in the minutes of the board meeting and in a separate writing dated two days after the meeting and signed by the president and secretary/treasurer of the board. In reliance on that agreement, [appellee] expended two months labor clearing trees in a 16 to 18-foot strip more than 700 feet long to prepare for laying a road bed. In further reliance on the agreement, he borrowed $6,500 to finance the roadway and mort-gaged his land to secure repayment of the debt. It was only after [appellee] expended this time, effort and risk, some 1½ years after the agreement to grant the easement, that the cemetery board attempted to repudiate the agreement to convey the easement. The particular facts of this case place the agreement to convey the easement outside the Statute of Frauds.

In *Taylor v. Eagle Ridge Developers, LLC*, 71 Ark. App. 309, 29 S.W.3d 767 (2000), we discussed the doctrine of estoppel and stated that a promise, which the promisor should reasonably expect to induce action on the part of the promisee or a third person and that does induce such action, is binding if injustice can

be avoided only by enforcement of the promise. *Id.* at 313, 29 S.W.3d at 769. We also held that estoppel may prevent the application of the Statute of Frauds. *Id.* at 315, 29 S.W.3d at 771; *see also Waterall v. Waterall,* 85 Ark. App. 363, 155 S.W.3d 30 (2004). Our courts have further recognized the existence of easements by estoppel. *See generally Forrest Constr. Co. v. Milam,* 345 Ark. 1, 43 S.W.3d 140 (2001); *Styers v. Northern,* 243 Ark. 429, 420 S.W.2d 74 (1967); *see also* 25 AM. JUR. 2D *Easements and Licenses* § 14 (2d ed. 2004) (stating that one who attempts to create an easement by estoppel must show that a representation was communicated to the promisee, that the representation was believed, and that there was reliance upon such a communication). Finally, our courts have often set forth the four elements necessary to establish estoppel: 1) the party to be estopped must know the facts; 2) the party to be estopped must intend that the conduct be acted on or must act so that the party asserting estoppel had the right to believe it was so intended; 3) the party asserting estoppel must be ignorant of the facts; 4) the party asserting estoppel must rely on other's conduct and be injured by that reliance. *Johnson v. Encompass Ins. Co.,* 355 Ark. 1, 130 S.W.3d 553 (2003).

When the law on estoppel is considered in its entirety, we agree with the trial court that appellant should be estopped to deny the easement in this case. The Board, acting under the authority it had exercised without question for many years, voted to convey the easement, and its chief officers drafted the October 17 memo, which represented to appellee and to others that he had been granted the easement. Appellee justifiably believed the representation and believed that the Board had the authority to convey the easement because the Board had been managing the cemetery's business for decades and had, according to appellee's mother, granted an easement to appellee's parents approximately thirty years earlier. Moreover, appellee, in good faith, relied on the representation by taking out a loan, mortgaging his property, and beginning work on the roadway. In light of these circumstances, we concur with the trial court's determination that it would be inequitable for appellant to deny the existence of the easement.

We note in closing that the Board's conveyance of the easement did not specifically describe its dimensions. However, the minutes of the meeting reflect that the easement would

be located "along the property line." Moreover, the trial court, after considering the parties' intentions, set forth the easement's exact dimensions and legal description in its order. In *Reeder v. Arkansas Louisiana Gas Co.*, 6 Ark. App. 385, 644 S.W.2d 291 (1982), we upheld a chancellor's order giving exact dimensions to an easement where the parties' contract had failed to do so. Likewise, in this case, we uphold the trial court's grant of an easement where the court's order specifically described the easement, even though no writing by the parties did so.

Affirmed.

HART and CRABTREE, JJ., agree.