104 Ark.App. 290

**POWHATAN CEMETERY, INC.; Darlene Moore, Individually and as Incorporator of Powhatan Cemetery; Evelyn Flippo, Individually and as Incorporator of Powhatan Cemetery, Inc.; and Robert Flippo, Individually and as Incorporator of Powhatan Cemetery, Inc., Appellants**

v.

**Lois COLBERT, Carolyn Depriest, Cletis Smith, Charles Hall, Sr., Charles Hall, Jr., Brent Tipton, Maleta Tipton, Individually and as Members of the Powhatan Cemetery Association, Appellees.**

No. CA 08–134.

Court of Appeals of Arkansas.

Feb. 4, 2009.

See also, 90 Ark.App. 424, 206 S.W.3d 277.

Mixon Parker & Hurst, PLC, by Donn Mixon, Jonesboro, for appellants.

John Barttelt, Jonesboro, for appellees.

ROBERT J. GLADWIN, Judge.

Appellants, Powhatan Cemetery, Inc., and Darlene Moore, Evelyn Flippo, and Robert Flippo, incorporators of Powhatan Cemetery, Inc., appeal the Lawrence County Circuit Court's orders of November 8, 2007, which found in favor of appellees Lois Colbert, Carolyn Depriest, Cletis Smith, Charles Hall, Sr., Charles Hall, Jr., Brent Tipton and Maleta Tipton, who were each members of the Powhatan Cemetery Association. At issue was the identity of individuals named to the board of directors of the corporation, who were alleged to be the directors of the trust that had established the Powhatan Cemetery Association. The trial court found that Powhatan Cemetery, Inc., while a valid corporation, was not authorized by the Powhatan Cemetery Association and did not have the legal right to maintain the cemetery. Based upon further findings, the trial court appointed as members of the Powhatan Cemetery Association Board the following: Darlene Moore, Maleta Tipton, Robert Flippo, Lois Colbert, Carolyn Depriest, Cletis Smith, and Charles Hall, Jr.

From the November 8, 2007 orders, appellants appeal contending that appellees did not plead a legal theory for which relief could be granted; that appellees lacked standing; that the trial court failed to make findings of fact and conclusions of law; that the trial court abused its discretion in failing to recuse and grant a new trial; and that the trial court's findings that the corporation has no legal authority to operate the cemetery, naming trustees for the cemetery, and ordering funds transferred are clearly erroneous. We disagree and affirm.

*Statement of Facts*

In 1877, a forty-acre tract of land in Lawrence County was deeded to B.F. Mat-

thews, George Thornburgh, and C.T. Stuart as trustees of the Powhatan Cemetery. For more than 100 years—apparently since the deaths of the original trustees—the cemetery's business has been conducted by the Powhatan Cemetery Association Board. Through the years, the Board has been comprised both of people who are descendants of the original trustees and people unrelated to the original trustees but who have been elected to serve.

This court held in *Powhatan Cemetery Ass'n v. Phillips*, 90 Ark.App. 424, 206 S.W.3d 277 (2005), that the Board had the authority to manage the cemetery when we upheld a lower court's ruling that an easement granted by the Board was valid. The appellant therein argued that, upon the deaths of the original trustees, title to the cemetery property descended to their heirs, subject to the trust. Therefore, appellant claimed, only those heirs or court-appointed successor trustees—not the Board members—had the power to convey the easement. In holding otherwise, this court reasoned:

> Appellant is correct that, as a general rule, upon the death of a person who holds title in trust, his heirs are vested with the estate, subject to the trust. *See Cole v. Williams*, 215 Ark. 366, 220 S.W.2d 821 (1949). However, in order to ensure that a trust may prevail rather than be extinguished due to a lack of authorized trustees, the general rule must sometimes yield when, over the course of many years, persons have assumed the mantle of trusteeship and the court has sanctioned their doing so. The case of *Slade v. Gammill*, 226 Ark. 244, 289 S.W.2d 176 (1956), is helpful on this point.
> *Slade v. Gammill* involved an 1848 deed in which Warner Brown conveyed property to three trustees of a cemetery.

Following the deaths of the original trustees, other trustees were appointed over the years, even though the deed did not provide for successor trustees. In 1954, the trustees serving at that time conveyed certain cemetery property to an adjoining church. Thereafter, the purported heirs of Warner Brown challenged the legality of the conveyance, claiming that the trustees had no authority to make the transaction. The trial court approved the conveyance, and our supreme court upheld the trustees' authority, stating that:

> It is elementary law that a court of equity will appoint trustees in any proper case in order to prevent a failure of the trust. This was recognized by our Court in the early case of *Conway, et al., Ex parte*, 4 Ark. 302 [1842]:

> "But even suppose that the ten trustees, who signed the deed, were incompetent to take, still, the other five being competent, a court of equity would not permit the trust to fail; for it is a rule in equity which admits of no exception, that a court of equity never wants a trustee. Whenever a trust is created, either by deed or will, or by operation of law, and no person is appointed trustee, equity will follow the estate, and cause the trust to be executed. If no trustee is named, or he dies, or the trust devolves upon an incompetent person, the trust shall prevail, and the Chancellor will appoint trustees."

> Again, in *Vaughan v. Shirey*, 212 Ark. 935, 208 S.W.2d 441, we said: "It is familiar law that equity will not permit a trust to fail through the failure of the named trustee to serve, but will, in that event, appoint another trustee...."

When Warner Brown conveyed the cemetery to Trustees in 1848, a trust was created. So, even if [the conveying trustees] were not the duly appointed, qualified and acting Trustees of the Warner Brown Cemetery at the beginning of this suit, they certainly were such after the decree of the Chancery Court in this case, because the decree not only recognized them as the Trustees, but recites: "... and their appointment are approved and confirmed...." Thus, the Chancery Court, which at all events had the residual power to appoint trustees, approved and confirmed the appointment of the said Trustees and likewise approved the execution of the deed which they made.

*Slade v. Gammill,* 226 Ark. at 249–50, 289 S.W.2d at 180 (citations omitted). In the case at bar, the original deed contemplated the existence of successor trustees; it deeded the land not only to the three original trustees but to "their successors in such Trusteeship forever, with all rights and privileges there unto belonging." While the deed made no provision for the manner in which successor trustees would be appointed, the evidence at trial was that, since the deaths of the original trustees, the Board has acted as successor trustee, with vacancies being filled by a vote of the remaining Board members. As trustee, the Board has, in the words of the trial court, "laid out plots, approved burials, cared for graves and markers, communicated with funeral homes, and even granted easements to neighboring land owners." Based on this evidence, the trial court found that the Board "acted by authority derived from that original deed." Thus, although the court did not formally appoint the Board members as trustees, it found them to be qualified and acting with due authority by virtue of many years of practice and custom, and by virtue of the deed's grant to "successors in such Trusteeship." Given these circumstances and the supreme court's holding in *Slade,* we affirm the trial court's finding that the Board had the authority to grant the easement in this case.

*Id.* at 430–32, 206 S.W.3d at 281–82.

Partly based upon their experience in the litigation surrounding *Powhatan Cemetery Ass'n v. Phillips, supra,* the Board determined to incorporate and began discussing incorporation in meetings held as early as 2000. On March 14, 2004, the Board voted unanimously to incorporate and, to that end, pay the necessary attorney's fees to attorney Clay Sloan and filing fees to the Secretary of State. According to the testimony at trial, Darlene Moore, a named appellant, was authorized to obtain the signatures of all Board members in order that articles of incorporation might be filed with the Secretary of State. The Articles were written such that the incorporators were the only members of the corporation, i.e., only those who were signatories on the Articles. Moore claims that all members of the Board signed the proposed articles of incorporation except Carolyn Depriest, who was out of town at the time. These Board members included Darlene Moore, Evelyn Flippo (Darlene Moore's mother), Robert Flippo (Darlene Moore's brother), Maleta Tipton, and Brent Tipton. However, appellees contend that several members were left out of the incorporation process and, thus, wrongfully excluded from the Board in violation of the trust. These members were Carolyn Depriest, Lois Colbert, Chuck Hall, Jr., and Cletis Smith.

The testimony at trial was that the Articles were filed on July 8, 2004, by Darlene Moore, but the completion of this task was

not reported to the Board for some nine months. Appellees brought suit, and in their amended complaint filed June 21, 2006, alleged that the Board members who signed as incorporators took improper control over the funds and bank account of the Powhatan Cemetery Association and refused to relinquish control of approximately $75,000, which had been donated by various families and citizens of Lawrence County for the care and upkeep of the cemetery. Appellees sought an injunction on use of any cemetery funds until the trial court determined the proper identity of the Board. Appellants filed a motion to dismiss alleging that the trial court lacked jurisdiction because appellees failed to state facts upon which relief could be granted; that there was no matter in controversy; that the appellees were not the real party in interest; that appellees had a conflict of interest; that appellees lacked standing; that appellees had unclean hands; that the claim was barred by limitations, laches, estoppel, and waiver; that the prerequisites of a shareholder derivative action had not been met; and that the prerequisites of an action related to an unincorporated association had not been met.

Sometime after the three-day trial, the trial judge contacted the attorney for appellees to notify him that the trial court had found in appellees' favor and to request that counsel prepare the precedent. Appellants filed a motion to dismiss, as well as a request for findings by the trial court, and a motion for recusal and new trial. A hearing was held November 8, 2007, wherein the trial court adopted the proposed findings of fact and conclusions of law prepared by appellees' attorney. This appeal timely followed.

### Standard of Review

Both parties contend that this case is subject to a de novo standard of review.

See *Sowders v. St. Joseph's Mercy Health Ctr.*, 368 Ark. 466, 247 S.W.3d 514 (2007); *Powhatan Cemetery Ass'n v. Phillips, supra.* The trial court's decision should not be reversed unless there is a finding that is clearly erroneous. *Phillips, supra.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left, upon reviewing the entire evidence, with a firm conviction that a mistake has been committed. *Id.*

### I.   Legal Theory

■   Appellants contend that the amended complaint does not set forth any facts upon which relief may be granted. They argue that during the trial, no legal theory was brought forth or suggested by appellees, and that appellees merely argued that this matter was an equity matter wherein the trial court might mold any remedy justified by law. Appellants cite *Fite v. Fite*, 233 Ark. 469, 345 S.W.2d 362 (1961), for the proposition that there must be some specific legal principle or situation which equity has established or recognized to bring a case within the scope of equity.

Appellants argue that there is no connection between the instant case and the original trust. They contend that this court previously concluded that the cemetery was bound by the actions of the Board. See *Powhatan Cemetery Ass'n v. Phillips, supra.* Appellants insist that there is no trust at issue here, and the complaint in this case does not seek any relief with regard to a trust. Therefore, they contend that there is no legal theory for relief that has been advanced by appellees, and this court should reverse the trial court's judgment.

Appellees maintain that their complaint states an adequate legal basis for equitable relief. As referenced above, this court held in *Powhatan Cemetery Ass'n v. Phil-*

*lips, supra,* that the cemetery was held in a charitable trust. Appellees contend that this litigation was filed when appellant Darlene Moore wrongfully seized control of the cemetery and its financial accounts through a series of deceitful and fraudulent actions. They argue that the essence of this matter was pinpointed by the trial judge when he questioned Moore about how one becomes a member of the cemetery corporation. She finally responded, "The problem is that when you have people who-many times are not wanting to go in the direction to protect certain things, then are they really an asset to that corporation? That's a concern of mine." The trial judge then asked if it was correct that the corporation members would have to permit others to come into the corporation. Moore agreed, stating, "We vote on members. That is correct." Appellees argue that Moore's testimony that all prospective members would have to agree with her as to the best interest of the cemetery speaks for itself. They allege, therefore, that the original trust had all but failed. We agree and hold that appellees' complaint states an adequate legal basis for equitable relief.

At the time of trial, the board of the new corporation consisted of Moore; her eighty-four-year-old mother; her brother who lives 200 miles away in Bella Vista, Arkansas (who had given power of attorney to Moore); Miriam Smith, who was identified on cross examination as Moore's sister; and Tom Caldron, a long-time acquaintance of Moore's. This case can only lie in equity because it involves the probable failure of an ancient trust and the actions of successor trustees. Further, there is otherwise no remedy at law. Appellees' complaint properly requests relief under equitable principles and establishes an adequate legal theory.

## II. *Standing*

Appellants argue that appellees lack standing to bring this action. Appel-

lants contend that the corporation was formed through proper legal procedures, resulting in a formal filing and acceptance by the Arkansas Secretary of State on July 8, 2004. Further that, thereafter, only the actions taken under the Articles could legally affect the structure of the corporation. Appellants argue that if appellees' contention that the initial incorporation of members and directors was fraudulently obtained, then the corporation would have rights to be redressed. They maintain that the mechanism to bring suit to redress wrongs suffered by a corporation is a stockholders' derivative action. *See* Ark. R. Civ. P. 23.1. Appellants insist that only shareholders or members may bring such an action, and the corporation is a necessary party. They contend that derivative-action procedures apply to non-profit corporations, citing *Morgan v. Robertson,* 271 Ark. 461, 609 S.W.2d 662 (1980). There, our supreme court stated, "We believe an officer, director and a member of a non-profit corporation is not without standing to question the management and conduct of other officers and directors which are alleged to be in violation of the By–Laws and Articles and against the purposes of the corporation." *Id.* at 466, 609 S.W.2d at 665.

Therefore, appellants contend that even if the corporation had been made a plaintiff, only appellees Brent Tipton and Maleta Tipton would have standing to assert their complaint. Appellants claim that because the Tiptons signed the Articles as incorporators and because the Tiptons do not assert that the corporation has been harmed, appellants cannot comprehend the complaint. Appellants argue that Lois Colbert, Carolyn Depriest, Cletis Smith, Charles Hall, Sr., and Charles Hall, Jr., were not and are not shareholders or members of the corporation. Therefore,

appellants argue that appellees have no standing to bring this action.

■ The courts have the responsibility to ascertain and protect the intent of the settlor in a charitable trust. The intention of the settlor is the paramount principle. *Peek v. Simmons First Nat'l Bank*, 309 Ark. 294, 832 S.W.2d 458 (1992). Equity dictates that a court appoint trustees when a trustee has acted wrongly and to avoid a failure of the trust. *Vaughan v. Shirey*, 212 Ark. 935, 208 S.W.2d 441 (1948). Because appellees hold an interest as trustees, regardless of whether they are former trustees or current trustees, they hold an interest that distinguishes them from the general public and provides reason to believe that, in their capacity as a representative, will give wholehearted support to the cause of the charity. Thus, we hold that appellees have standing.

### III. Findings of Fact and Conclusions of Law

■ A trial court is obligated to make findings of fact and conclusions of law upon a litigant's request made prior to the judgment. Ark. R. Civ. P. 52(a) (2007). Appellants argue that the trial court failed to make findings of fact and conclusions of law when requested to do so. Appellants contend that they made the request when they learned that the trial court had communicated with appellees' attorney. They assert that, at the hearing on appellants' motion, the trial court declined to make findings, but instead, adopted the order prepared by appellees' attorney. Appellants argue that this is not in compliance with the requirement of making findings of fact and conclusions of law under Rule 52. Appellants claim that the order adopted by the trial court is simply a paraphrase of appellees' briefs and does not comply with Rule 52.

However, we hold that the trial court complied with Rule 52(a). It is undisputed that, after the trial, both parties submitted post-trial motions and briefs. When the trial court invited appellants to object to the proposed findings of fact and conclusions of law, appellants declined. The trial court did not err by adopting the order prepared by appellees' counsel as his own. Further, as no specific objections were raised, there are no grounds for relief.

### IV. Recusal

■ The decision to recuse is within the trial court's discretion, and it will not be reversed absent abuse. *Porter v. Arkansas Dep't of Health & Human Servs.*, 374 Ark. 177, 286 S.W.3d 686 (2008). An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court. *Id.* Appellants filed a motion for the trial court to recuse alleging that the judge had communicated ex parte with appellees' attorney. Appellants claim that the trial court abused its discretion in failing to recuse and grant a new trial. Appellants assert that the trial judge has a duty to "avoid impropriety and the appearance of impropriety in all of the judge's activities." Ark.Code Jud. Conduct, Canon 2. Further, a judge shall not initiate ex parte communications. Ark.Code Jud. Conduct, Canon 3 B(7). Finally, a judge must dispose of all judicial matters promptly, efficiently and fairly. Ark.Code Jud. Conduct, Canon 3 B(8).

Appellants contend that, even though appellees' attorney claimed in his response to the recusal motion that he had no discussion of the merits of the case with the trial judge, some discussion of the merits had to have taken place in order that appellees' attorney might know how to prepare the precedent. Also, they allege that the trial judge took no measures to include appellants' attorney in any discus-

sions. Appellants finally argue that the trial court took two-and-one-half months from the time they requested findings of fact and conclusions of law to file an order.

However, appellees claim that the trial judge did not abuse his discretion in failing to recuse. They reiterate that appellants never complained that the trial judge acted improperly in any way or exhibited any prejudicial bias in the case. Appellees point out that appellants complained only after they learned that the trial court had ruled against them and had asked the prevailing party to prepare a precedent. Despite appellants' accusations at the hearing on the motion, there is nothing in the trial court's final order that was not in evidence.

A judge is presumed to be impartial. *City of Dover v. City of Russellville*, 346 Ark. 279, 57 S.W.3d 171 (2001). The party seeking recusal must demonstrate bias. *Id.* We hold that the trial judge did not abuse his discretion in denying appellants' motion for recusal.

## V. Whether Findings are Clearly Erroneous

Appellants contend that the trial court's findings-Powhatan Cemetery, Inc., has no legal authority to operate the cemetery, naming trustees for the cemetery, and ordering funds transferred—are clearly erroneous. Appellants contend that every witness at trial testified that the governing body of the cemetery agreed that the cemetery was to be incorporated. They point out that the minutes of meetings reflect that the board voted to incorporate and that Clay Sloan was to do the legal work for the incorporation. The articles of incorporation were filed with the Secretary of State, a certificate was issued, as was an employer identification number. They maintain that there is no dispute with the fact or form of the incorporation,

and that appellees' only dispute has been with the identity of the members of the corporate board. However, appellants contend that all appropriate legal steps were followed to incorporate as authorized by the association, and therefore, the trial court's finding that the corporation has no authority to operate the cemetery is clearly erroneous.

The trial court ordered that Darlene Moore, Maleta Tipton, Robert Flippo, Lois Colbert, Carolyn Depriest, Cletis Smith, and Charles Hall, Jr., are to serve as trustees of the Powhatan Cemetery. Appellants claim there is no law or evidence to support naming anyone as a trustee of the cemetery. As this court previously noted in *Phillips, supra,* the cemetery had been operated by the Powhatan Cemetery Association for many years. Therefore, appellants claim that any reference to trustees is clearly erroneous. Further, appellants claim that the trial court's naming of the particular seven people had no basis in the evidence. Appellants point out that Brent Tipton's testimony was that he was sworn in, along with Maleta Tipton, Darlene Moore, and Carolyn Depriest. However, he did not know if Lois Colbert and Charles Hall, Jr., attended any meetings before March 2004. He did not disagree that Cletis Smith did not attend meetings before March 2004. Further, appellants claim there was no dispute that Evelyn Flippo and Robert Flippo were longtime board members prior to 2001. Therefore, appellants argue that even if the trial court used the standard of "board-members-at-the-time-of-incorporation" to name the trustees, the decision was clearly erroneous.

Finally, appellants contend that the order to transfer funds to the seven people named is clearly erroneous. They argue that there was no evidence with regard to funds or their source. They contend there is no basis for any ruling in this regard.

Appellees maintain that the trial court's findings are not clearly erroneous. They point out that only Moore's testimony supports the contention that Lois Colbert and Charles Hall, Jr., were never members of the board and that Carolyn Depriest and Cletis Smith can be ousted with no legal recourse. Appellees claim that Moore did not invent this theory until after the meeting of April 16, 2005, when she became upset. In fact, appellees argue that Moore had to admit upon cross examination that she served with these individuals on the board for many years, that they voted, made motions, seconded motions, and participated in every way. Also, Moore never raised one objection at any time.

Appellees argue that Moore has no excuse for not obtaining the signatures of Lois Colbert, Carolyn Depriest, Cletis Smith, and Charles Hall, Jr., on the proposed articles of incorporation. Clay Sloan testified that he designed the Articles so that all of the current board members would be incorporators, and subsequently new board members. Further, Maleta Tipton testified that she specifically told Moore to obtain the signatures of Colbert, Hall, Smith, and Depriest prior to filing the Articles, and Moore agreed. Also, the evidence showed that Lois Colbert had taken minutes at meetings for about three years, despite Moore's testimony otherwise. Finally, every board member who testified, other than Moore, claimed that Moore never made it known to them that the Articles had been filed. Therefore, they maintain that the trial court's findings are not clearly erroneous, and we agree.

Affirmed.

HENRY and BAKER, JJ., agree.